# THE INSURANCE CO. OF NORTH AMERICA *vs.* ANNA M. SCHALL ET AL., ADMINISTRATOR.

*Removal of Cause From Law to Equity and Vice Versa—Specific Performance of Contract to Insure Refused For Lack of Equity.*

By the Act of 1896, ch. 229, it is provided that in every case at law or in equity, in which it shall appear the plaintiff is entitled to some relief or to some remedy, but not in the particular Court in which the suit is brought, the plaintiff shall not on that account be non-suited or the case dismissed, but the case may, in the discretion of the Court, be removed to such proper Court as the nature of the case may require. *Held,* that there is no constitutional objection to the validity of this Act on the ground that it does not provide for an appeal from an order of removal, because an appeal is a matter of statutory right and also because no appeal lies from the discretionary action of the trial Judge.

A bill for the specific performance of a contract to insure and the payment of a loss thereunder alleged that the agent of the insured applied for insurance on one-fourth of a cargo of cocoanuts from Porto Rico to Baltimore; that this application was accepted by the defendant company and afterwards the cargo was lost at sea; that the assured declared the value of the one-fourth to wit, a certain sum, which was the invoice price with ten per cent added, and demanded the policy of insurance contemplated in the application. The evidence showed that the cargo had been insured in other companies at an excessive valuation; that the assured collected from these companies $2,000 more than the invoice value of the cargo, and that the insured was not bound under the contract made with the defendant by his agent until he ratified it after the loss. *Held,* that the relief asked for should be refused since specific performance of a contract will not be decreed unless necessary to subserve the ends of justice and the contract is in all respects fair and mutual.

VOL. 96                    15

Appeal from a decree of the Circuit Court of Baltimore City (STOCKBRIDGE J.)

Ths cause was argued before MCSHERRY, C. J., FOWLER, BOYD, PEARCE and JONES, JJ.

*George Whitelock* and *Edw. I. Koontz*, for the appellant.

*Robert H. Smith* and *Alfred S. Niles*, for the appellees.

FOWLER, J:, delivered the opinion of the Court.

The plaintiffs in this cause are the administrators of John W. Schall, deceased, and the defendant is The Insurance Company of North America. The former brought an action of *assumpsit* against the latter in the Court of Common Pleas of Baltimore City on an alleged contract to insure a cargo of cocoanuts. Upon the trial it appeared, however, that the defendant company had never issued a formal policy, but had simply given what is called a "binder," which was signed by both parties or their representatives and indicates that a special policy would be issued when the necessary declarations of value have been given in. At the conclusion of the case the Court, at the instance of the defendant, instructed the jury that the plaintiffs were not entitled to recover ; but instead of submitting to a judgment of *non pros*, they availed themselves of the provisions of the Act of 1896, ch. 229, which has been codified as sec. 42 Art. 26, and sec. 107A, Art 75. By this Act it is provided that in every case at law or equity in which it shall appear that the plaintiff is entitled to some relief or to some remedy but not in the particular Court in which the suit is brought, the plaintiff shall not on that account be non-suited or the case dismissed, but the case may, in the discretion of the Court, be removed to such proper Court as the nature of the case may require. It is further provided that upon such removal such proceedings shall be had by amendment of the pleadings or otherwise as may be necessary and proper according to the practice of the Court

to which the case has been removed.   The learned Judge of the Court of Common Pleas, after hearing both sides ordered that the case be removed to the Circuit Court of Baltimore City, upon the theory that the binder or application sued on in this case is not a complete policy, and that the remedy, if any, was in a Court of equity.  *Delaware State Fire and Marine Ins. Co.* v. *Shaw*, 54 Md. 546.  Accordingly the plaintiffs filed their bill on the 4th of February, 1902, in the Circuit Court for Baltimore City.

1. The first question presented arises upon the objections of the defendants to the validity and constitutionality of the Act of 1896, ch. 229.   This objection, as we understand, is based upon the ground that there is no right of appeal secured to the litigants from the order of removal, and that, therefore, while a party under the Constitution is entitled to a final judgment in the Court where he brings his case and to an appeal from that judgment to this Court, the Act of 1896 substitutes for these rights the arbitrary discretion of the lower Court.   It is well settled that the right of appeal to this Court exists in such cases only as the Legislature makes provision for, and hence when the Act of 1896 conferred upon the Court below the power, in his discretion, to remove the case from a Court of law to a Court of equity, and failed to provide for an appeal, none can be taken for two very plain reasons, first, because no provision is made for it and second, because no appeal lies from the discretionary action of the trial Judge.  We are unable to discover any constitutional objection to the legislation in question.   The Act was passed evidently in pursuance of the laudable purpose on the part of the Courts and the bar, with the aid of the Legislature, to prevent delay in legal proceedings and to promote justice.   Experience may, perhaps, demonstrate that further legislation may be desirable to effect the object sought to be attained by the Act, but we are unable to agree with the severe criticism passed upon it by the counsel for the defendant.

In Massachusetts the Act of 1865, ch. 179, was passed authorizing the Supreme Judicial Court and the Superior Court

to allow amendments changing a suit at law into a proceeding in equity, if the same be necessary to enable the plaintiff to sustain the action for the cause for which it was originally intended to be brought.    As far as we have been able to ascertain the validity of this Act has never been challenged.    In the case of *George* v. *Read*, 101 Mass. 378, it is said that this statute (1865) " Extends the power to grant amendments but a single step.    It confers no new jurisdiction."

2.  We will now consider the merits of the case as disclosed by the bill, answer and testimony.

In the first place it should be stated that the bill is one for specific performance and, therefore, we must be guided by the well-settled principles of equity applicable to such a case in reaching a conclusion here.    It was said in *Bamberger* v. *Johnson*, 86 Md. 38, and the same general doctrine has been repeatedly announced here and elsewhere that in deciding whether a bill for specific performance will be maintained the Court takes into consideration the conduct of the plaintiff and all the circumstances of the case, and the mere fact that a valid contract exists is not conclusive in the plaintiff's favor." And in *O'Brien* v. *Pentz*, 48 Md. 562, it was held that in every case where a specific performance is asked " the question must be whether the exercise of the power of the Court is demanded to subserve *the ends of justice*, and unless the Court is satisfied it is right in every respect, it refuses to interfere."    With these general rules to guide us we will proceed to state what, as appears by the record, the case before us is.

The bill alleges that Thomas B. Schall, the plaintiff's intestate, purchased about the 18th February, 1896, a cargo consisting of 370,389 cocoanuts and shipped them on board the schooner " Percy W. Schall;" that on or about the 25th February, Schall through George H. Stetson, an insurance broker in New York, applied to the defendant insurance company at its New York office for insurance against loss and damage on a one-half interest in said cargo and that said application was accepted by defendant in writing.    This accepted application, binder or contract to insure or whatever it may be

called was signed by the agents of defendant and Mr. Stetson claiming to represent Schall, the assured.    It is set out in full several places in the record, but in the view we have formed it will not be necessary to reproduce it here.    It provided, however, for insurance of one-fourth instead of one-half the cargo.    On the voyage from Porto Rico to Baltimore the schooner took fire and both she and her cargo were thereby wholly lost.    After the loss the assured, Schall, through his broker, Stetson, declared, according to the usage in such cases the value of one-fourth interest, viz., $1,677.50, *which was the invoice price* with ten per cent added, and demanded from the defendant a special policy of insurance such as was contemplated by the written application, but it refused and still refuses to comply with the demand.    The bill alleges that the assured has complied in all respects with his duty in the premises and during his life time was always ready to pay the defendant the premium due for said insurance and the plaintiffs tender themselves ready to do the same and in all other respects to comply with the terms of said application for insurance.    The prayer is that the defendant may be required to issue and deliver its policy on one-quarter interest in the cargo mentioned, and that it be required to pay the plaintiffs the said sum of $1,677.50, one-fourth of the invoice value and ten per cent added, with interest.

The answer of the defendant admits the cargo was shipped as alleged that it was destroyed at sea, and the execution of the application of the 25th February, for insurance, but denies that Stetson, the broker, represented Schall.    We deem it unnecessary to refer to all the defenses set up by the answer, but it will suffice for the present purpose to call attention to some of the allegations of the paragraph by which it is set forth that at the time of the loss Thomas B. Schall owned a policy in the Boston Marine Insurance Company covering the whole cargo in question ; that on 15th January, 1896, Schall notified J. H. Sirich who was the manager of the Boston company to cover under the policy this cargo of cocoanuts *worth from $4,000 to $6,000,* and an entry was at that time made in

the pass-book ; that the cargo was lost about 21st February, 1896, and a few days thereafter a clerk of Schall (who was then in Porto Rico), received advices that the cargo amounted to 370,389 cocoanuts and that he had "figured out" insurance amounting to over $22,000 on the cargo ; that the Boston company, through Sirich objected to the amount of the risk, and in the absence of Schall, but apparently with the consent of his clerk, arranged with the defendant to assume a portion (¼) of the risk ; that between the 25th February, 1896, and the subsequent return of Schall to Baltimore and after the defendant had agreed to insure, his clerk took the pass-book to the Boston company and the entry therein was changed so as to reduce the liability of that company , in other words its policy was made, or attempted to be made, to cover only one-half instead of the whole cargo.    The contention of the plaintiffs, and some of the witnesses so testify, is that the Boston company never intended to assume more than half the risk, but whether that be so or not or whether the Boston company's policy was or was not changed without the consent of Schall we do not feel called upon to determine. Nor need we pass definitely upon the many other questions argued at bar, for it seems to us there is one circumstance which must necessarily prevent the plaintiff from succeeding . And it is this : When the Boston company and the other company settled for their share of the loss they discovered that the estimate of $22,000 for the value of the cargo, was *excessive* and instead of paying some $11,000 which it would have been required to pay under that excessive valuation, the Boston company paid about half that amount.    The other company, it is not denied, paid $2,500 so that there has been collected by the plaintiffs over $8,000 on a cargo which was valued in the invoice at $6,000 and in the Boston company's policy by the assured at $5,700.    If there was nothing else in the case, it is clear upon the well-settled rules we have already referred to that a Court of equity would not aid the assured in recovering money claimed upon a concededly excessive valuation.    It is evident that if the clerk of the assured had not by

mistake or otherwise " figured out " the valuation $22,000 instead of $6,000, the Boston company would not have even attempted to re-insure to protect themselves or the assured, and it certainly is neither reasonable nor just that the plaintiffs should by their own, or their intestate's mistake, be allowed to recover in a Court of equity more than the fair value of the property. It is not to be supposed—there is no proof to the contrary—that the cargo was undervalued both in the invoice and the pass-book. In the one it is valued at $6,000 and in the other at $5,700.

But in addition to the fact that the plaintiffs have already received full compensation for the loss of the insured cargo, there are other facts either conceded or proven by the testimony which would make a Court of equity hesitate to grant relief by way of specific performance in such a case as this.

Thus it is clear, on the evidence, that Schall would not have been bound by what his clerk and the Boston company did if he had not *after the loss*, when it was his interest to do so, ratified their acts in securing additional insurance. And of course if he was not bound mutuality would be wanting and the defendant could not have been held. Again, the evidence in regard to the entering of the words "½ interest" in red ink on the pass-book does not afford a satisfactory explanation under all the circumstances of this case. If that entry had not been placed there the policy of the Boston company would have covered the whole cargo, and under the protection of the provisions of the American Clause which was contained in the defendant's policy it would have been relieved of all liability.

Without prolonging this opinion our conclusion is that the plaintiffs are not entitled to relief in a Court of equity.

*Decree reversed with costs and bill dismissed.*

(Decided January 15th, 1903.)