## ELMER M. WHITEFORD *vr.* GEORGE W. YELLOTT.

*Cloud on Title—Annulment in Equity of Contract of Sale for Failure of Purchaser to Pay Subsequent Instalments of Price.*

A contract for the sale of a farm for $8,000, payable in instalments extending over six years, provided that the purchaser might at once take possession of the dwelling house and out-buildings and hold them so long as the stipulated payments were made, and that the farm was not to be conveyed, and a purchase-money mortgage executed, until a certain amount of the price had been paid. The buyer paid only two instalments, and then, upon his failure to make further payments, was required to quit the premises in pursuance of a provision contained in the contract. It was also provided that upon the failure of the purchaser to pay any one or more of the instalments when due, all previous payments made by him should be forfeited. When the instalments for two years were in arrears, the vendor filed the bill in this case asking that the contract of sale, which had been recorded, be vacated and annulled as constituting a cloud on the title of the plaintiff. The defendant averred in his answer that he was willing to comply with the terms of the agreement, but there was no evidence in the case of his ability to do so. *Held,* that although time was not of the essence of the con-

tract, yet that the defendant's neglect to comply with the provisions of the agreement for two years constituted a bar to any enforcement by him of his claim under it at law or in equity, and that the plaintiff is entitled to a decree annulling the contract of sale, so that his title may not be clouded by an invalid claim.

*Decided November 1st, 1906.*

Appeal from Circuit Court for Baltimore County (BURKE and DUNCAN, JJ.)

The prayer of the bill was that 'the contract might be revoked, cancelled and set aside and the record thereof vacated, and that the plaintiff be decreed to hold and enjoy the property described in the exhibits, unaffected thereby. The bill was filed on June 23rd, 1905.

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*John L. G. Lee,* for the appellant.

*John I. Yellott,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County, in equity, vacating a contract of sale of a farm and freeing the title of the vendor from the cloud put upon it by the presence of the contract upon the public records.

The bill of complaint was filed in the Court below by the appellee, George W. Yellott, who was the vendor of the land. Its substantial allegations are as follows: The appellee owning the legal title to and being in possession of a farm in Baltimore County entered into a written contract on July 24th, 1903, to sell it to the appellant, Whiteford, for $8,000, to be paid $250 in cash, $250 on October 1st, 1903, $500 on February 1st, 1904, $1,000 on March 1st, 1905, $2,000 on March 1st, 1906 and $4,000 on March 1st, 1909. The deferred payments were to bear interest at 5 ½ per cent *per annum* and the

purchaser was to have the privilege of anticipating the payments at any time. The contract was duly recorded among the land records of Baltimore County.

Whiteford, having made the cash payment of $250, took possession of the dwelling-house with its adjacent lawn and outbuildings in accordance with the terms of the contract. Yellott retained possession of the remainder of the farm. Whiteford made the second payment of $250, called for by the contract, sometime after its maturity but he never paid anything more on account of the purchase-money or any interest on it, although often requested to do so.

After Whiteford had defaulted on two of the deferred payments of purchase-money Yellott, in pursuance of one of the provisions of the contract, treated him as a tenant at will and served on him a notice to quit the portion of the farm of which he had taken possession. Whiteford thereupon surrendered the land he had occupied and never thereafter made any claim to it, and Yellott was in full possession of the entire farm when the bill was filed. Yellott afterwards sold portions of the farm to other persons but was unable to complete the sales because the purchasers refused to accept his title to the land so long as the prior contract for the sale of the farm to Whiteford remained of record and unrevoked, and his farm was thus rendered practically useless to him for marketable purposes.

The prayer of the bill is for a decree revoking the contract of sale and declaring the farm to be unaffected thereby and for geneal relief.

A certified copy of the contract was filed with the bill as an exhibit. It provided for the sale of the farm on the terms mentioned in the bill and also that Whiteford might at once take possession of the dwelling house with its outbuildings and lawn and hold them so long as he made the payments as stipulated by the contract but no longer, that Yellott might retain possession of the remainder of the farm until Whiteford had paid all of the instalments of purchase-money to fall due up to and including March 1st, 1904, amounting to $2,000,

and interest, and that on the payment by Whiteford of those instalments at their maturity the farm was to be conveyed to him and he was simultaneously to secure to Yellott by a purchase-money mortgage on the farm the payment of the remaining $6,000. The contract also provided that if Whiteford failed to pay any one or more of the instalments of purchase-money when it became due under the contract all previous payments made by him should be forfeited to Yellott to whom he was thereupon to surrender full possession of the land and buildings theretofore held by him, and further that, upon default by Whiteford to pay at maturity any instalment of the purchase-money, he should be held to occupy the part of the premises then in his possession so long as he remained on it as a tenant at will of Yellott.

The defendant, Whiteford, was duly summoned and appeared to the case but failed to answer in time and a decree *pro confesso* was entered against him. He subsequently demurred to the bill and his demurrer having been overruled he filed an answer. His answer admits the making by him of the contract to purchase the farm as alleged, and that he paid only the two instalments, of $250 each, of the purchase-money but avers that he has always hoped and believed that he would be able to consummate the purchase. He further avers that he made certain improvements on the farm and that it would be a hardship to have the agreement for its purchase revoked. He asserts in general terms a readiness to comply with his agreement when and as the Court may order or direct and suggests that the Court decree a sale of the farm and a distribution of the proceeds between him and the plaintiff according to their respective interests therein.

The testimony of the parties to the case and other witnesses having been taken the case came to a hearing and the Circuit Court passed the decree appealed from.

The evidence appearing in the record sustains the allegations of the bill. In fact there is but slight conflict of testimony as to the material facts of the case. Whiteford when on the stand in his own behalf admitted that he had paid only the

two $250 instalments of the purchase-money due under the contract and that the second of those two instalments was overdue when he paid it, and that he never offered to pay any more.   At one point in his testimony he said that in January, 1905, he had offered, through his friend Swormstedt, to pay Yellott $1,500 on account of the farm, but Yellott denied that any such offer was made.   Swormstedt, when put upon the stand, was unable to remember communicating any such an offer to Yellott, although he did remember informing him that Whiteford was willing to pay him $6,500 for the farm. At that time the unpaid balance of purchase-money under the contract amounted to $7,500.   Whiteford also testified that after he had failed to pay the instalment of purchase-money which fell due on October 1st, 1903, he was told by Yellott that unless he paid $1,500 on account the deal was off, but he further said that in April, 1904, when he surrendered the portion of the farm which had been occupied by him, Yellott expressed a willingness "to allow him a year to come up to the agreement," "or rather to make the payments."   Yellott testified that he regarded the sale of the farm as a good one and had desired to complete it and had always been ready and willing to do so if Whiteford had complied with his part of it, but the latter had done nothing in that direction beyond the two payments of $250 each on account of the purchase-money.   He further testified that Whiteford, when $7,500 of the contract price remained unpaid had said he would give $6,500 for the farm.   The evidence fails to show that Whiteford made any permanent or valuable improvements during his occupancy of the dwelling and its curtilage.   On the contrary it shows that during that time he cut down a number of valuable trees which stood near the residence.

Under these circumstances we are of opinion that the learned Judge below correctly disposed of the case both in overruling the appellant's demurrer and in passing the decree appealed from.   This Court has had frequent occasion to announce the familiar proposition that equity will not allow a title otherwise clear to be clouded by a claim which cannot be

enforced either at law or in equity. *Holland* v. *Baltimore*, 11 Md. 197; *Polk* v. *Rose*, 25 Md. 162; *Stewart* v. *Meyer*, 54 Md. 467; *Brown* v. *Stewart*, 56 Md. 432; *Hall* v. *Livingston*, 73 Md. 395.

In the present case if Whiteford had sought to enforce a claim against the farm under the contract before us either in law or in equity he would have had no standing in Court. He certainly could not have maintained a bill for a specific performance of the contract for he had for almost a year and a half been continuously in default in the payments of purchase-money due under it. He when notified to quit surrendered without contest to his vendor, in April, 1904, the portion of the land which he had occupied and from that time practically abandoned the contract. In January, 1905, he authorized Swormstedt in his behalf to make a new offer of $6,500 for the farm. After pursuing such a line of conduct the appellant cannot, without offering any adequate reason or excuse for his persistent indifference to his plain and clear contractual obligations, be regarded as having relieved himself from his attitude of default by the general assertion made in his answer of a willingness to comply with the terms of his agreement when and as the Court might order and direct. Nor is the general statement made in his testimony that he is "prepared" to carry out the purchase, unaccompanied by any information as to his financial resources, convincing as to his ability to pay the balance of the purchase-money specified in the contract if he were to be reinstated in his original rights under that instrument.

Giving to the appellant the full benefit of the well-known reluctance of equity to enforce a forfeiture or to treat time as of the essence of a contract unless the parties themselves have made it such by clear and positive expressions, we are forced to the conclusion that his own laches and his indifference to and practical abandonment of his contract would have proven an insuperable bar to any effort on his part to procure a decree for its specific performance. Courts of equity in exercising their discretionary power to enforce contracts have re-

gard to the conduct of the plaintiff and to circumstances outside of the contract itself, and the fact of the existence of a valid contract is not conclusive in the plaintiff's favor. The party asking for the execution of the contract "must be able to show that he has fully, not partially, performed everything required to be done on his part" or he must present adequate reasons for any failure of such performance. *Bamberger* v. *Johnson*, 86 Md. 41; *Ins. Co.* v. *Schall*, 96 Md. 228; *O'Brien* v. *Pentz*, 48 Md. 578; *Mills* v. *Matthews*, 7 Md. 324; *Small* v. *Owings*, 1 Md. Chy. 371; *Oliver* v. *Patterson*, 11 G. & J. 446. It is true that where time is not of the essence of a contract, a substantial performance of its requirements in reference to such matters as length of notice to be given or date of payment of purchase-money will entitle a plaintiff, not otherwise in default, to maintain a bill for specific performance, *Derrett* v. *Bowman*, 61 Md. 528; *Wilson* v. *Herbert*, 76 Md. 496; but the conduct of the present appellant does not bring him within the operation of that doctrine.

The appellant could not have successfully set up his claims in an action at law. He could not have maintained an ejectment for the land or any part of it as he never acquired the legal title to it. Nor could he have maintained a suit at law on the contract, for in order to succeed in such a case he would have been required, with much greater strictness than in equity, to allege and prove that he had performed all of the stipulations on his part contained in it. *Poe on Pleading*, sec. 565, and cases there cited.

The appellee was in our opinion entitled to have the contract of sale vacated and his title to the farm declared to be free from any cloud by reason of his contract with the appellant and we will affirm the decree appealed from.

*Decree affirmed with costs.*