THE SOUTHERN REAL ESTATE COMPANY, A Body
Corporate of Pittsburg, Pennsylvania,

*vs.*

LEONARD STRUB, SR., and HELEN STRUB,
His Wife.

*Contracts for sale of land: title of vendor; ——to be perfected;
effect on contract.   Payments on account: forfeiture.
Cloud on title: Bill to remove.*

A contract for the sale of land is not rendered void merely
because at the time of entering into it the vendor did not have
such title as the contract called for, *i. e.,* a good, marketable
title.                      .                              p. 520

Where a party—a purchaser under a contract of sale—en-
deavored to resell the property to others before he had acquired
title or complied with the terms of sale, and at a time when his
vendor had not yet perfected his own title, and when by the
original contract of sale he was not yet required to have a per-
fect title to the property, such original vendor is not liable for
the inability of his vendee to complete his sale.     pp. 521-522

Under an agreement of sale, a purchaser had made a pay-
ment on account; upon the payment of certain deferred pay-
ments, and the execution of a mortgage for the balance of the
purchase money, a deed was to have been given; the purchaser
defaulted in the deferred payments, defaulted in the final pay-

ments for which an extension had been given, and never tendered the mortgage; the intended purchaser never demanded the rescission of the contract, nor the return of the sum paid on account; meanwhile the vendor entered into a new agreement for the sale of the property, to a second purchaser; but the latter, fearing the former transaction might have the effect of casting a cloud upon the title, refused to consummate the purchase; on appeal, the Court affirmed the decree of the lower court quieting and establishing the title in the vendor, free from the claims of the first purchaser.                    p. 522

*Decided May 5th, 1916.*

Appeal from the Circuit Court of Prince George's County. In Equity. (BEALL, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*G. W. S. Musgrave* and *James P. Curley,* for the appellant.

*James U. Dennis* (with whom were *Stanley & Boss* on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

In this case the appellees on the 1st day of April, 1913, filed their bill in the Circuit Court for Prince George's County, in which they alleged in substance, that on the 15th day of September, 1910, they entered into an agreement with one Jonah R. Long, of Youngstown, Ohio, to sell to him the farm, known as Avondale, situated in said county and containing four hundred and seventy-two acres of land, more

or less, and that by a subsequent and supplemental agree-ment they sold him the growing crops and personal property on said premises. The whole purchase price therefor being fifty-nine thousand dollars ($59,000), which was to be paid as follows: Five hundred dollars on the execution of the contract, one thousand dollars within thirty days and two thousand dollars within sixty days, thereafter, and nine thou-sand dollars on February 1, 1911, and eleven thousand dol-lars upon the execution and delivery of the deed therefor on or before May 1, 1911. The payment of the balance of the purchase money, to wit: thirty-five thousand five hundred dollars was to be secured by first mortgage and notes payable one year from date, with interest at six per centum per annum, payable semi-annually.

Long, the purchaser, on the 25th day of January, 1911, with the assent of the appellees, assigned and transferred said contract unto the appellant corporation and under such assignment the rights of the said purchaser were assigned to the appellant, the defendant corporation in the lower Court. The cash payment of five hundred dollars, as well as the deferred payments of one, two and nine thousand dollars were paid, although the installment of nine thousand dollars was not paid promptly at the time designated in the contract. The amount to be paid on or before May 1, 1911, to wit, the sum of eleven thousand dollars was not paid, though at such time the plaintiffs had ready for delivery to the defendant a deed for said property, duly executed and acknowledged. Thereafter the plaintiffs (the appellees) from time to time, at the request of the defendant company, extended the time within which it was to comply with the contract aforesaid "to June, 1912," when it was notified that the contract was for-feited under the forfeiture clause contained in the aforesaid supplemental agreement of December 8, 1910. The plain-tiffs at the same time demanded and obtained possession of the premises from the defendant and held the same to and at the time of the filing of the bill; that on the 29th day of June, 1912, the appellant and appellees entered into an agree-

ment giving the defendant sixty days from July 1, 1912, to make a payment of ten thousand dollars and execute the said mortgage and notes which it failed to comply with and it has admitted its inability to comply with the same.

It was, however, expressly agreed therein that such agreement should not be considered and treated as a waiver of the forfeiture then existing, and that the defendant's failure to pay said sum of ten thousand dollars would render the agreement in all its parts null and void. The defendants again defaulted and on October 3, 1912, the plaintiffs gave to the defendant notice that all its interest in said farm under said contract had ended by forfeiture, and a similar notice was thereafter given the defendant by the plaintiffs' attorneys, and from such time to the day of filing the bill "no claim or pretension of claim had been made by said defendant to said property, but as far as their acts and dealings, or the acts or claims of its officers or any of its stockholders are concerned, the said contract and contracts of sale have been treated by all of them as forfeited and no claim set up against said property or for rights under the said contract."

The bill then alleges that after such notice of forfeiture the plaintiffs proceeded to advertise said property for sale and after months of advertisement they received an offer to buy it and when about to execute and deliver a deed to such new purchaser, "the objection was made by the attorney for said purchaser that said contract, though forfeited, until so decreed by the Court, operated as a cloud upon the plaintiffs' title and declined to carry out their contract or make any payment whatever until after a decree for forfeiture could be obtained or there should be some judicial determination in an affirmative manner by some Court having jurisdiction in the premises, protecting any owner of said premises from any claim in equity under the original contract with Jonah R. Long, or the defendant his assignee."

It was to remove this supposed cloud upon the title that the plaintiffs, at the suggestion of the person offering to purchase, filed the bill in this case. The prayers of the bill are

that the contracts made with Long and his assignee, the defendant, be declared forfeited and null and void, and that the defendant be forever foreclosed of any equity of redemption in said property by reason of said contracts, and that the title be quieted as against any claim of the said defendant or of any person or persons claiming by from or under it.

The defendant answered the bill and filed a cross-bill. In its answer it admits that the eleven thousand dollars that was to be paid on or before May 1, 1911, was not paid, but avers "that on said date the plaintiffs were not in a position to convey to the defendant a good title to said property" and denied that the plaintiff "ever executed, acknowledged and had ready for delivery a good and sufficient deed on the date above mentioned conveying merchantable title to said land to the defendant," or "that any deed conveying a good and merchantable title to said property was at any time tendered to the defendant upon the payment of the said sum of money, but on the contrary it charges that the plaintiffs were unable to convey to the defendant a good and merchantable title to said property because of the fact that there was living one Rebecca M. Hickok, an infant, who had a vested interest in and to the said land, conveyance of which could not be made in any manner." The answer further avers that " the plaintiffs by their contract agreed to convey a good and merchantable title to the said land which they are unable to do because of the interest of said infant Rebecca M. Hickok in and to said property, constituting a defect in the title, which when brought to the attention of the prospective investors in the stock of said corporation, frightened off such prospective investors and in several specific instances was the sole cause of the subscribers to the stock of said corporation refusing to invest therein, so that the defendant was thereby prevented from obtaining large sums of money from such stock subscriptions which would have been more than sufficient to have enabled it to perform all the agreements made by it."

There are other averments or allegations in the answer and cross-bill, but we do not think it necessary to allude to them in deciding the question presented by this appeal.

The cross-bill prays that the contract of sale and the sale of said property made by the appellees be decreed null and void, *ab initio,* and that the defendants to that bill, the appellees here, be required to make an accounting with it for all sums of money received by them for or on account of the purchase price of said property and that after an allowance of a reasonable sum for use and occupation of said property during the time it was in their custody and control that the balance be awarded to it.

The plaintiffs answered the cross-bill, asking for the same relief as sought by them under their original bill. A vast amount of testimony was taken, much of it altogether irrelevant, having no bearing whatever upon the issues presented and should not have found its way into the record.

The Court below by its decree of September 10th, 1915, dismissed the cross-bill and declared the contracts with the defendant to be null and void, and the payments made to the plaintiffs upon the purchase money for said land forfeited and also declared that there is nothing due and owing by the said Leonard Strub, Senior, and Helen Strub, his wife, or either of them, to the said Southern Real Estate Company, and that the title to the real estate mentioned in the proceedings quieted and established as against any claim of the defendant or any person or persons claiming by from or under it.

It is from that decree of the Court that this appeal is taken.

The contention of the defendant and that upon which it practically rests its defence is, that the plaintiffs were not able to give a good title to the property at the time the deed was to be executed and delivered on or before May 1st, 1911, if the defendants had complied with the terms of the contract, and that because of this fact and the alleged defect in

the title they were prevented from raising, by sale of the stock of the company, an amount sufficient to enable them to comply with the terms of the contract.

It appears from the record that the plaintiff Leonard Strub, Sr., purchased the aforesaid property from G. Ober & Sons Company, of Baltimore City, in the spring of 1910, and at such time it was found that Rebecca M. Hickok, an infant, held a 1/14 undivided interest therein and because of her infancy could not convey her interest in the same to the purchaser, but to secure the conveyance of said interest when she arrived at age a bond of five thousand dollars was given by herself and sister to Strub, the purchaser, and at the same time a mortgage for seven thousand dollars ($7,000) was executed and delivered by Strub and wife to the vendors, two thousand dollars ($2,000) of which was for money loaned to him by the mortgagees and the balance, five thousand dollars ($5,000), was for the unpaid balance of the purchase money, which, was not to be paid by the expressed provisions of the mortgage until the mortgagees named therein should deliver to the mortgagors "a confirmatory deed conveying to the mortgagors, their heirs or assigns the interest of Rebecca M. Hickok in the property" aforesaid. In the original contract of September 15, 1910, no mention is made of this mortgage nor is there any allusion therein to the aforesaid interest of Rebecca M. Hickok. But the supplemental contract of December 8, 1910, after alluding to the execution of the contract of September 15th, contains the following clause, "and whereas there are some discrepancies in said contract and it does not fully set out the agreement or understanding between the parties thereto and it is hereby intended to ratify and confirm said contract of sale, except for the modification herein." Among other provisions found therein is the following: "That the said party of the second part (Jonah R. Long, the defendant's assignor) agrees to assume the mortgage of seven thousand dollars ($7,000) now against said property and to pay the interest thereon from November 14, 1910, the sum so paid or assumed to be

deducted from the balance of the purchase money (for which a mortgage is to be given as set out in said original contract) when the title passes to said property."

It is shown by the record that Rebecca M. Hickok would not reach the age of majority before the 2nd day of March, 1912, and it will be borne in mind that under the original contract, the sum of eleven thousand dollars was to be paid upon the execution and delivery of the deed on or before the first day of May 1911.

This provision of the original contract was not modified by the supplemental contract of December 8, 1910. Therefore, the time at which the property was to be conveyed was at least ten months prior to the time when Rebecca M. Hickok would arrive at age and would be able to convey her interest therein. The supplemental contract meets this condition by providing, as we have said, that Long should assume the payment of said mortgage, five thousand dollars of which was not payable until said infant should arrive at age and upon the execution by her of a deed for her interest in said property, and the amount of said mortgage was to be deducted from the amount of the mortgage that was to be given by Long to Strub at the time of the execution and delivery of the deed by Strub and wife to Long.

It is true that the original contract provided that the deed from Strub to Long should convey "a good and marketable title," but this language must be construed in the light of the provisions of the supplemental contract which reflect upon the intention of the parties in the use of such term. The supplemental contract specially states that there was some discrepancies in the original contract, and "that it does not fully set out the agreement or understanding between the parties thereto." It was to correct such discrepancies and to supply such omissions and to have the contract conform to the agreement and understanding of the parties that the supplemental contract was executed, as stated in it.

To construe these contracts to mean that the eleven thousand dollars was not due and payable until Strub had first

received a confirmatory deed conveying the interest of Rebecca M. Hickok in said lands, would, we think, be in conflict with the intention of the parties and inconsistent with the provisions of the supplemental contract; and such a construction of the contracts would also be inconsistent with the statement of Long, made upon the day of the execution of the supplemental contract, as testified to by Strub, that "it was understood that the seven thousand dollar mortgage and the Hickok affair would be all cleared up when she became of age." But should it be held that under the contract Strub, the plaintiff, was to convey to the defendant on or before May 1, 1911, a marketable title to said lands free and clear of Rebecca M. Hickok's interest therein, upon the defendant's compliance with the terms of the contract; it was not essential that the plaintiffs should have held *such title* prior to May 1st, 1911, or prior to the offer of the defendant to comply with the terms of said contract by the payment of said $11,000 and the execution of the mortgage and notes aforesaid (*Maryland Construction Co.* v. *Kuper,* 90 Md. 529), and the defendant's inability to sell the stock of the company to meet the payment of said sum at such time caused, as it is said, by the alleged defect, of plaintiffs' title existing prior to that time, imposed no liability upon the plaintiffs, and it did not in any way relieve the defendant of the payment of said sum at the time it was payable under the contract.

After the default of the defendant in making the aforesaid payment on or before May 1st, 1911, the time in which it was to comply with the terms of the contract was extended from time to time, the last time being on June 29th, 1912, and at such time Rebecca M. Hickok had arrived at the age of majority and had previously, on March 23rd, 1912, conveyed her interest in said land to the plaintiff and the deed had been duly recorded among the Land Records of Prince George's County, and therefore, on June 29th, 1912, and at the time of the subsequent default the alleged defect in the title did not exist. The defendant did not at any time, either

before or after the deed from Rebecca M. Hickok ever notify the plaintiffs that it was ready to comply with the terms of the contract and did not at any time tender to them such part of the purchase money and a duly executed mortgage, upon which its right to a deed for such land depended. Nor does the evidence show any demand upon the plaintiffs for a rescission of the contract and refund of the purchase money paid by it until the cross-bill was filed in this case. We may also add that it is not shown by the testimony that the failure of the defendants to meet the payments of purchase money when and as they became due was owing to its inability to sell its stock, because of the alleged defect in the title. They sold, it would seem, enough of the stock to have met such payments had the money received therefor been so applied. The defendants, paid in the aggregate quite a large sum of money upon the purchase of the farm. This is admitted by the plaintiff, but they allege and show that the amount was greatly reduced by the loss of interest, the payment of taxes, insurance and other causes.

The plaintiffs, we think, are entitled to the relief sought by this bill notwithstanding the well known reluctance of a Court of Equity to enforce a forfeiture. *Whiteford* v. *Yellot,* 104 Md. 196. We will therefore affirm the decree of the Court below.

*Decree affirmed, with costs to the appellees.*