# THE CITYCO REALTY COMPANY OF BALTIMORE CITY

*vs.*

## HIRAM W. FRIEDENWALD et al.

*Equity*: *witnesses; recalling of—; new evidence not to be brought out for first time, after cross-examination.*
*Specific performance*: *frivolous niceties, no ground for refusal.*

In an equity proceeding, after a witness for the defendant has been examined and cross-examined and intervening witnesses have been examined, such witnesses should not be allowed to be recalled to give, for the first time, evidence with regard to new matters of defense which were not set up in the answer, nor brought out in the witness's original testimony.    p. 335

In order to justify a court of equity in refusing to issue a decree for the specific performance of a contract of sale, because of objections to title, incumbrances, etc., the doubt must be considerable and rational, such as would and ought to induce a prudent man to pause and hesitate; objections based on captious, frivolous and astute niceties merely are not sufficient.
p. 333

*Decided February 15th, 1917.*

Appeal from Circuit Court No. 2 of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. Albert Baker* and *John L. G. Lee,* for the appellant.

*Samuel J. Fisher* and *Allan Herbert Fisher,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The bill was filed in this case to obtain a decree for the specific enforcement of the following contract of sale:

"This Agreement, Made this 22nd day of July, nineteen hundred and fifteen, between Hiram W., Benjamin B. and Jacob H. Friedenwald, agents for the heirs of Joseph Friedenwald, of the first part, and the Cityco Realty Company, a corporation, of the second part:

Witnesseth, that the said parties of the first part do hereby bargain and sell unto the said party of the second part, and the latter doth hereby purchase from the former the following described property, situate and lying in Baltimore City, and described in a deed from Druid Park Heights Co. to Jos. Friedenwald, dated Feb. 10, 1875 (J. B. No. 91, fol. 43), and shown on a plat prepared by S. J. Martenet & Co., dated July 12, 1905, annexed hereto.

At and for the price of thirty-five hundred ($3,-500.00) dollars, of which one hundred dollars have been paid prior to the signing hereof and the balance is to be paid as follows: On date of transfer, which shall be within 90 days from the date hereof.

And upon payment as above of the unpaid purchase money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the vendee.

Taxes and other charges to be paid or allowed for by the vendor to date of transfer, which shall be within 90 days from the date hereof.

Witness the hands of the parties of the first part and the signature of John J. Hurst, Pres. of the party of the second part.

> Hiram W. Friedenwald,
> Benjamin B. Friedenwald,
> Jacob H. Friedenwald,
> Agents for the Heirs of Jos. Friedenwald.

Test: S. J. Fisher.

> Cityco Realty Co. of Baltimore City,
> per John J. Hurst."

It will be observed that by its terms the purchase of the property was to have been consummated by October 22nd. This was not done. After that date there was some correspondence between the parties or their attorneys. No objection was made to the title in any of this, or claim that the proposed vandee would not get exactly what he had contracted for. The burden of the appellant's letters was that it did not have the money available to carry out the purchase, and a modification of the terms of payment was asked for, but not acceded to. The contract not having been carried out, or any modification of the agreement made, on January 22nd, 1916, the bill was filed to compel the specific performance of the contract.

The defendant made no answer, and on March 10th, 1916, a decree *pro confesso* was entered against it under which the plaintiffs proceeded to take their testimony. This was completed and returned to Court, referred in regular course to the auditor and master, who reported on April 28th, the case was one for a decree for specific performance, on the same day the appellant filed a petition asking leave to be allowed to answer. This the Court granted on the 3rd of May upon terms, one of which was that the answer should be filed within fifteen days.

In the meantime the attorney for the defendant had written to the attorneys for the plaintiffs the following letter:

"Law Offices
Bonsal & Lee,
511-515 Calvert Building,
                    Baltimore, April 13, 1916.
Messrs. Fisher & Fisher,
    Union Trust Building,
        Baltimore, Md.
Gentlemen:

In regard to the case of Friedenwald *et al.* vs. City-co Realty Company, about which I saw your Mr. Samuel Fisher yesterday, I would say that Mr. Hurst insists on filing his answer in the above entitled cause.

You gentlemen have been so courteous to me in this matter, however, in extending time, etc., that I hesitate to file the same. Mr. Hurst does not care to execute the mortgage for $2,000, as he fears that would tie up the property for a small amount. He tells me, however, to say to you gentlemen that if you will wait until the 1st day of June he will guarantee to hand you the money, and further than that, he authorizes me to say that he thinks he can raise $500 within the next few days for a payment on account.

                    Yours truly,
                        John L. G. Lee."

This is cited as bearing upon the good faith of the subsequent acts of the vendee.

On the same day on which the petition for leave to make an answer was filed, the appellant by its president, made affidavit to an answer, which was not filed, however, until the 16th of May, or just before the time limited by the order of Court.

The averments in that answer upon which the company relied to defeat the bill for specific performance were:

"First—That the property herein described is not available for development in building lots, the purpose for which it was represented, and is not as laid out on the plat filed with said answer.

Second—That the thirty-foot street or alley shown thereon is neither open physically nor legally, and at what would be the intersection of the thirty-foot alley and Hillsdale street, said alley has been permanently obstructed by the erection of a building by one Bennett and his predecessors in title, and the said Bennett claims title in fee simple to the bed of said alley occupied by said building.

Third—That Woodberry Ave., the only other street, lane or alley giving access to the property, has been entirely shut off by the Mayor and City Council at Park Heights avenue, so that it is now impossible for vehicles of any description to reach the property.

That the property is of little or no value without means of ingress or egress and its utility is so limited that it is of practically no value.

John L. G. Lee,<br>Solicitor."

The law in this State in regard to when the specific performance of a contract for the sale of land will or will not be enforced, has been settled in a long line of cases, and is nowhere better expressed than in the case of *Gill* v. *Wells,* 59 Md. 492, in an opinion delivered by the late JUDGE MILLER: "It is a sound principle of law relating to the specific performance of contracts, that a vendee is not bound to take an estate fettered with incumbrances by which he may be subjected to litigation to procure his title, and in a contract for the purchase of a farm he is not bound to accept anything short of an unincumbered legal estate in fee, the title to which is free from reasonable doubt. A threat or even the possibility of a contest will not be sufficient. The doubt must be considerable and rational, such as would and ought to induce a prudent man to pause and hesitate, not based on captious, frivolous and astute niceties, but such as to produce real, bona fide hesitation in the minds of the Chancellor," and this language has been reaffirmed in *Herzberg*

v. *Warfield*, 76 Md. 449, and *Levy* v. *The Iroquois Co.*, 80 Md. 300.

With regard to the cases cited and relied on by the appellant it is proper to say a few words:

The case of *Penniman* v. *Winner*, 54 Md. 127, was a suit at law on a promissory note given for the purchase of an oil well, and it was there held that the fact that the well did not produce enough oil to justify working it, did not constitute a failure of consideration.

The case of *Gunby* v. *Sluter*, 44 Md. 247, was also a suit at law and not a proceeding in equity.

In the case of *Ginther* v. *Townsend*, 114 Md. 122, the Court refused a decree for specific performance, for the reason that the estate of the vendor was a defeasible, not an absolute estate under the will of his mother, there being a limitation over of the property by way of an executory devise in the event of the son dying without issue. This son had undertaken to convey to the purchaser a good and sufficient title to the land, free of all incumbrances, and this was held by this Court to present a material difference between what the vendor agreed to sell, and what he was capable of selling.

The case chiefly relied on, is the case of *Shea* v. *Evans*, 109 Md. 229, where this Court held that where there were restrictions relating to the character of the building which might be erected upon the land, which was the subject-matter of the sale, and their locations which may affect its market value, and the purchaser is not aware of such restrictions, that specific performance of a contract to purchase the land will not be decreed.

In that case, as in the case now before us, the defense of restrictions upon the land was not set up in the answer, but there was evidence before the Court, not excepted or objected to, showing the existence of restrictions, in part analagous to those relied on by the defendant here. In this case, differing from the case of *Shea* v. *Evans*, the testimony was made the matter of special exception.

The evidence as to the restrictions was not given in behalf of the defendant when its President, Mr. Hurst, was originally placed upon the stand, but his examination and cross-examination had been concluded, and he was then recalled after another witness had been examined, recalled not for the purpose of contradicting the intervening testimony, but to enable him then for the first time to give evidence in regard to certain restrictions. The exception to this line of testimony at this stage of the case, upon a matter of defense not set up in the answer, nor brought out in his original examination, was a valid one, and the evidence should not have been admitted.

We revert now to the matters of defense claimed on behalf of the Cityco Realty Company.

The first of these is that "the property described is not available for development in building lots, the purpose for which it was represented and is not as laid out on the plat filed with the bill of complaint." There is no contradiction in the evidence that Mr. Hurst, the President of the Cityco Company, was thoroughly familiar with the property; familiar not merely in a general way, but precisely and minutely, because he had been over the ground with Mr. Mintz, the agent of the plaintiff, prior to entering into the contract of sale. The business of the Cityco Company was the development of property, and its availibility for development must have been just as evident to Mr. Hurst from his personal examination of the land before the contract of sale, as after it. Nor was any claim made by Mr. Hurst, or request to be relieved from the purchase of the property upon any such ground, prior to the filing of the answer in this case.

The contract made mention of a plat but it also referred to the deed under which the Friedenwalds derived title. Even assuming that Mr. Hurst entered into the contract in reliance upon his personal inspection of the property and a plat, neither of these could have shown him any covenants for restrictions which might effect the land. These could only appear from an examination of the deeds.

The second ground of objection is, that a thirty foot street or alley, and a street spoken of as Hillsdale street, were neither physically or legally opened, and that one Bennett had permanently obstructed the alley by the erection of a building in its bed. It is true that neither the street nor the alley had been physically opened, but by a decree of the Circuit Court No. 2 of Baltimore City, in the case of the *Druid Park Heights Land and Improvement Co.* v. *Bennett, et al.,* it had been distinctly declared that the street and alley in question had been, by a certain deed, dedicated for public use as avenues or streets, and further requiring the defendants in the case, among whom was Bennett, to remove from the bed of said avenues or streets the stable or other structures now in or upon them or any of them, or within 25 feet from the lines of said avenues or any of them; such removal to be made upon thirty days' notice of a desire to use the same as streets or avenues. This would seem to effectually dispose of the claim that the streets had not been legally opened.

The third ground assigned in the answer was that Woodberry avenue, the only other street, lane or alley giving access to the property had been entirely shut off by the Mayor and City Council at Park Heights avenue, so that it was impossible for vehicles of any description to reach the property.

The evidence shows that at the time of filing the answer, and the taking of the testimony, by reason of regrading, one end of Woodberry avenue had been shut off from public use and access to Park Heights avenue; but it also shows that the other end of Woodberry avenue gave an entirely practicable means for access to and egress from the property in question, and this Court can not presume that because access from one highway, such as Woodberry avenue, to another highway, such as Park Heights avenue, had been obstructed to traffic, that it was bound to remain so for all time. Its condition in this respect in no way differed from what it was when Mr. Hurst made his personal inspection of the property, and

was fully known to Mr. Hurst when he entered into the contract of sale.

Moreover, it appears that the defendant company owned the land lying between that contracted to be sold and Park Heights avenue, and, therefore, if it desired it might readily construct a means of access.

The fourth objection mentioned in the answer was practically but a repetition of the third, and is fully covered by what has been said in that connection.

The objection now raised because of certain restrictions imposed by the deed from the Druid Park Heights Co. to Friedenwald, if the evidence upon that point was admissible, is the most serious. There is a direct conflict of the evidence whether these restrictions were brought to the knowledge of Mr. Hurst—the preponderance of it being that it was so known to him, and this, taken in connection with the successive steps in the case already enumerated, the entire omission of all reference to this objection in the answer, and the stage of the testimony where this objection is first made leads to the conclusion that this objection is "captious and frivolous," to use the language of JUDGE MILLER already quoted.

The decree appealed from will accordingly be affirmed.

*Decree affirmed, with costs.*