## SUBURBAN GARDEN FARM HOMES CORPORATION ET AL. *v.* GEORGE W. ADAMS, ET AL.
### [No. 32, October Term, 1936.]

214

*Decided January 12th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Edward J. Colgan, Jr.* with whom were *Karr & Colgan* on the brief, for the appellants.

*T. Howard Duckett* and *James C. Mitchell,* for the appellees.

SLOAN, J., delivered the opinion of the Court.

On the 16th day of July, 1934, the plaintiffs, George Adams and Mary E. Adams, his wife, agreed in writing to sell to the Suburban Garden Farm Homes Corporation, one of the defendants, which agreed to buy, a tract of land known as the "Moore" tract, containing about 1,175 acres, situate at Waldorf, in Charles County, and a tract adjoining, known as the "Martin and Knapp" tract, containing about 235.5 acres, the two containing about 1,410.5 acres. They also agreed to sell the lots "now owned by parties of the first part, fronting on the Northeasterly line of State Boulevard, and extending back to the Popes Creek Branch of the Pennsylvania Railroad, located Northeasterly from White Plains Station, containing one thousand four hundred and seventy-five (1,475) acres, more or less, for the price of Nine Thousand Five Hundred Dollars ($9,500)." The total acreage conveyed is not 1,410.5 plus 1,475 acres, but is not more than 1,475 acres. The lots are platted on the two tracts mentioned, and to some extent, not clearly shown, cover other land, but whether owned by the plaintiffs and covered by the agreement does not clearly appear. The terms of payment were $50 on the signing of the agreement, three payments of $50 each in one, two, and three months, $3,000 within four months of the signing of the agreement, and a mortgage for $6,300, payable with interest in three equal installments in one, two, and three years. The agreement contained three provisions, all of which are important in the decision of this case, as follows:

"It is agreed that the parties of the first part shall furnish an abstract within thirty days, showing good and marketable title.

"It is further agreed that title shall be such as will be insured by any reputable title insurance company.

"The property shall be conveyed clear of all liens, encumbrances and easements except taxes for the year nineteen hundred and thirty-four, which shall be apportioned to date of settlement."

The agreement, which was filed as an exhibit to the bill, was signed by all parties to it, and acknowledged by the plaintiffs.

The plaintiffs, on September 18th, 1935, filed their bill of complaint against the appellants, wherein they alleged that they had, on July 16th, 1934, contracted with the corporate defendant to sell to it 1,475 acres of land, more or less, and that the contract evidencing the sale had been recorded among the Land Records of Charles County; that the plaintiffs had acquired title to the land so agreed to be sold from Joseph A. Wilmer, treasurer of Charles County, at a tax sale; that the corporate defendant had made five payments of $50 each on account of the purchase money (an error, as all agreed that four, as provided by the contract, had been made); that shortly after the execution of the contract the corporate defendant had referred the matter of the examination of the title to the Maryland Title Guarantee Company of Baltimore, which all parties agree is a "reputable Title Insurance Company," and on September 13th, 1934, and on October 17th, 1934, the title company reported to the plaintiffs, indicating "that the outstanding record title was in the Washington Gardens, Inc., subject to the rights which the plaintiffs acquired by the above referred to deed, and subject furthermore, to a certain deed of trust from the Washington Gardens, Inc., to Millard T. Grinder and Taylor E. Eicher, Trustees," as to a part of the land containing 235 acres, and to a deed of trust to George J. Moss and F. P. Williams, as to another part of the land; that the plaintiffs have secured a deed from Washington Gardens, Inc., and the release of the deeds of trust mentioned in the title company's report; that on April 18th, 1935, the title company advised the corporate defendant, through its attorney, Edward J. Dougherty, that it had been "furnished with all papers necessary to clear the title to the" properties, and "are now in a position to issue" its "policy free of any exceptions as to mortgages or liens, * * * and the only exceptions to be contained in our policy of insurance are mentioned

in the second page of each report, which exceptions are matters of record, and it is impossible to do anything about them, * * * that the said exceptions mentioned in the report of the Title Company are wholly irrevelant to the title to said property, and do not affect the same in anywise, and the said corporate defendant was so advised, and said corporate defendant was further advised that the plaintiffs were in a position and ready and willing to deliver a deed to it conveying the said title free and clear of all liens and encumbrances of record," but that it refuses and persists in its refusal to take title to the property and to comply with the terms of sale; that by agreement, dated April 26th, 1935, recorded among the Land Records of Charles County, the Suburban Garden Farm Homes Corporation contracted with its president, Edward J. Dougherty, also a defendant, to convey to him 235.5 acres of the land agreed to be conveyed to it by the plaintiffs; that both of the contracts mentioned and so recorded are clouds on the title of the plaintiffs, but the defendants, though requested by the plaintiffs to take title or comply with the terms of sale, have refused to do either. The bill then prays that the contracts be rescinded and canceled, and the title be quieted as against any claim of the defendants.

The defendants answered that they have been at all times, since the execution of the agreement, ready, willing, and able to comply with its terms but deny that the plaintiffs can deliver a good and marketable title, in its present condition, free of all liens, encumbrances, and easements, and charge that since April 29th, 1935, the plaintiffs have made no further efforts or attempts to remove or clear the various objections or easements against which the title company, in its reports, declined to insure.

Some evidence was taken, after which the chancellor decreed that the agreement of July 16th, 1934, and the agreement of the corporate defendant with Edward J. Dougherty, be forfeited and rescinded, and the title of

the plaintiffs be quieted as to both agreements, and the defendants appeal.

It is not questioned that, if the plaintiffs are prepared to convey a good, marketable title, free and clear of liens and encumbrances, and not subject to easements which may affect its marketability or insurability as prescribed by the contract, and the defendants refuse to accept the deed, then the plaintiffs are entitled to a rescission of the contract, which would remove the cloud on the title. *Whiteford v. Yellott*, 104 Md. 191, 64 A. 936; *Homewood Realty Corporation v. Safe Deposit & Trust Co.*, 160 Md. 457, 471, 154 A. 58; *Southern Real Estate Co. v. Strub*, 128 Md. 513, 97 A. 705.

A like result might, though not necessarily, follow from a bill for specific performance. *Newman v. Johnson*, 108 Md. 367, 70 A. 116. "The granting of relief (however) by either remedy is not a matter of absolute right, but is largely within the sound discretion of the court, and no relief will be afforded in any case unless under all the attendant circumstances the exercise of jurisdiction would be just and equitable." 9 *C. J.* 1196. As stated in one of the cases there cited (*Kirby v. Harrison*, 2 Ohio St. 326, 333): "It is undoubtedly within the sound discretion of the chancellor to refuse to rescind a contract, the specific execution of which he would not decree; and thus leave the parties to their legal remedies. * * * But, in general, where a specific execution would be refused, a rescission will be decreed. And where the party in default 'has trifled, or shown a backwardness on his part,' and his default is gross, and the circumstances and value of the property have materially changed, a recission ought to be decreed." Compare *Diamond v. Shriver*, 114 Md. 643, 80 A. 217. It is noticeable, however, that in this case both parties have cited as authorities cases in which decrees for specific performance have been prayed. There is one rule stated in *O'Brien v. Pentz*, 48 Md. 562, often cited and quoted in this court, equally applicable to bills for recission or specific performance, and that is: "The party seeking

its execution must, at the same time, be able to show that he has fully, not partially, performed every thing to be done on his part." *Raith v. Cohen,* 142 Md. 38, 50, 119 A. 700; *De Crette v. Bonaparte,* 139 Md. 252, 262, 114 A. 880; *Bamberger v. Johnson,* 86 Md. 38, 41, 37 A. 900.

The defendants in their answer say they are willing and desirous of taking the title agreed to be conveyed to them but that they should not be required so to do unless and until the plaintiffs either have the easements reported by the title company removed and released, or it be shown that they are not so material as to cast on it a reasonable doubt, and so affect the marketability of the property. It is incumbent on the plaintiffs to produce evidence, as they agreed, that there are no such easements, and that, if there are, they are beneficial to the estate or not injurious. If the objections of the defendants are unfounded, captious and not made in good faith, then the contract should be rescinded and the cloud removed from the plaintiffs' title. There are objections to insurability raised by the title company which might be material, but there is so little evidence with respect to several of the alleged easements that this court is of the opinion that it cannot pass judgment on them. With the apparent willingness of the defendants to accept the plaintiffs' title, if found to be free and clear of liens and encumbrances, and not subject to easements or other defects which might cast a reasonable doubt on the title, the contract should not be summarily rescinded. They are buying to sell, and they cannot sell unless the title is merchantable. If and when it may be found that the easements and conveyances by prior owners do not materially affect the title, then, because of the attitude of the defendants, the decree should be for rescission or specific performance, unless the defendants by a day certain comply with the terms of sale. To attain this end, however, it will be necessary for the plaintiffs to so amend their bill as to be bound by a decree to convey; in effect to amend it into a bill for specific performance. This sug-

gestion is made as the proof already taken would be available under an amended bill.

The conclusion which we have reached makes necessary some discussion of the title company's exceptions to a policy proposed to be issued insuring against liens and encumbrances. In its reports of September 13th, 1934, and October 17th, 1934, some appearing in one report, some in both, it said it would not guarantee title against the legal effect and operation of several conveyances and grants of easements, some of which can be eliminated, as the corporate defendant admits that it knew of their existence. Two were deeds to the Baltimore & Potomac Railroad Company from Sasscer and Moore, executed over sixty years ago. The evidence is that these deeds conveyed fee-simple titles. There were two grants of rights of way from the Farms Company to the Chesapeake & Potomac Telephone Company, with the usual right to erect poles, string wires, etc., and two from Washington Gardens, Inc., for electric light and power lines. Edward J. Dougherty, president of the corporate defendant, vendee, knew of the existence of these structures on the land and said they were of benefit and advantage to the property. The defendants now say they do not know whether the poles are erected on the rights of way. It is not an unwarranted assumption that they are located in accordance with the grants. This objection can be dismissed as without merit under the decision in *Newman v. Johnson*, 108 Md. 367, 70 A. 116. Another exception made by the Title Company was to a contract between the Farms Company and Henry L. Mudd, December 19th, 1919, for the sale of timber and railroad ties, to be removed in three years—too trifling for comment.

In the report of October 17th, 1934, the title company said it would not guarantee the title "to so much of the property under examination as was conveyed" by (1) a deed from William H. Moore and wife to the Board of School Commissioners of Charles County, February 14, 1901; (2) a deed from the Farms Company to Charles

Shlagel, for 21 acres, October 25, 1924; and (3) 20.6 acres, "claimed by Ella C. Hicks, as set forth in a mortgage from the Farms Company of Maryland to the National Bank of Baltimore, dated August 2, 1916." Powell Vickers, examiner for the title company, said he could not tell from the Land Records whether any of them were within the lines of the land agreed to be sold, that "it would take a surveyor or somebody with personal knowledge." Mr. Adams, the only other one testifying, said: "I know the Hicks property, and while I live by it, I know it was not in the property that Mr. Dougherty bought, absolutely not. It is a part of the Hicks property where there used to be an old school house years ago, adjoining the Moore place. And then when that mortgage was given, it was a corner that run into the Moore place." He had no knowledge of what the deeds or Land Records show. He states that he did not "regard the Hicks tract as a part" of his land, that he "never sold them" and "did not have anything to do with them," and that the Hicks tract was never a part of either the Moore or Knapp tracts. He said the Hicks tract "was a corner that run into the Moore tract." His testimony is so indefinite and inconclusive that we cannot tell whether the Hicks tract was at one time within the lines of what is now called the Moore tract of 1,175 acres or adjoined it. Certainly Adams had no intention of selling it, and did not regard it as his to sell. It must at one time have belonged to a person or corporation at least who or which was a predecessor of the plaintiffs in title; otherwise the title examiner would not have discovered and noted the exception. There is no evidence of the location of the land conveyed to Charles Shlagel containing twenty-one acres. Whether the Hicks and Shlagel tracts are within the lines of the land here bought and sold is not decisive of the right of the defendants to accept or reject the property. The question is whether they, or either of them, are so located as to materially affect the use, enjoyment, and marketability of the rest of the property covered by the agreement. If the result is a deduction

in acreage, the defendants might be entitled to a proportionate abatement of the purchase money. *Ahrens v. Ijams,* 158 Md. 412, 148 A. 816; *Tolchester Beach Imp. Co. v. Boyd,* 161 Md. 269, 156 A. 795. Inasmuch as the title company has raised the question of their effect on the insurability of the property, it becomes the duty of the plaintiffs to show by proper evidence, by survey if the chancellor requires it, the location of these two tracts. The conveyance to the Board of School Commissioners requires no consideration, as Edward J. Dougherty, who owns nearly all of the stock of the corporate defendant, testified that he "would not think that would interfere."

There is another matter, practically ignored in the trial of the case, and that is the effect of the recording of two plats, each subdividing into small farms and lots all or a large part of the land here agreed to be conveyed, with roadways intersecting so that every lot and parcel fronts or binds on a road or street. The plats were made in 1923, and placed on record. If no lots were ever sold, so that no third party had acquired any rights or easements in the roads laid out and platted, or they had not been dedicated to public use and accepted by the public road authorities, the plats of themselves would not cast any reasonable doubts on the title, but, in the absence of evidence that any parcels of the subdivisions have been conveyed or the property burdened with easements, public or private, as a result of sales or other acts of the former owners, we cannot assume that the title has not been encumbered by doubts sufficient to affect the marketability of the property. It is the duty of the plaintiffs, and they have so agreed, to convey a title "clear of all liens, encumbrances and easements." They have caused all liens and encumbrances to be released, and they are no longer obstacles in the way. It is just as essential that any easements which cast a reasonable doubt on the title, and may interfere materially with the use and marketability of the property, be removed, and this is also the plaintiffs' duty before they can call on the defendants to consummate the sale by payment.

When the chancellor is satisfied, an exception in a title insurance policy will be no further excuse to the vendee for its failure to comply with the terms of sale. As said in *Gill v. Wells*, 59 Md. 492, "the vendee is entitled to have that for which he contracts, before he can be compelled to part with the consideration he agreed to pay. He is not bound to take an estate fettered with incumbrances by which he may be subjected to litigation to procure his title; and in a contract such as is sought to be enforced in this case, the vendee is not bound to accept anything short of an unincumbered legal estate in fee, the title to which is free from reasonable doubt." Or, as said in *Levy v. Iroquois Building Co.*, 80 Md. 300, 305, 30 A. 707, 708: "The purchaser has the right * * * to demand a title which shall enable him not only to hold his land, but to hold it in peace; and one so clear of doubt as will enable him to sell the property for its fair market value. At the same time, it is not every doubt or suggestion or even threat of contest that will be sufficient; otherwise an assailing purchaser might in every case raise or make such an objection." *Herbold v. Montebello Association*, 113 Md. 156, 162, 77 A. 122; *Cityco Realty Co. v. Friedenwald*, 130 Md. 329, 333, 100 A. 374. As an easement is a right in property usually enjoyed by parties who are strangers to the contract and not parties to the suit and not bound by the decision, unless the court is reasonably certain, after hearing the evidence, that the title is free of a reasonable doubt, the vendee ought not to be required to take the property contracted for. " 'The Court when fully informed must know whether a title be good or bad; when partially informed, it often may and ought to doubt.' * * * The doubt must be considerable and rational, such as would and ought to induce a prudent man to pause and hesitate; not based on captious, frivolous and astute niceties, but such as to produce real *bona fide* hesitation in the mind of the Chancellor." *Gill v. Wells*, 59 Md. 492, 495.

It may be that the title here contracted for is unfettered by easements other than the railroad, telephone,

and electric lines, and free from reasonable doubt, but the evidence in the record is so incomplete that we cannot say so. A quitclaim deed has been secured from the owner whose title was sold to the plaintiff at a tax sale; the mortgages or deeds of trust noted by the title company have been released; this court has here declared the easements granted the telephone and electric companies to be unobjectionable, and the defendants have expressly waived any objections to the railroad, telephone and electric lines. These leave as the only questions open the location of the Hicks and Shlagel tracts, and if they, or either of them, be within the lines of the property sold, whether they materially affect its use and market value, and whether there have been any sales of lots, acquirement of any rights of easements in streets and roads by such purchasers, or the dedication and acceptance of streets and roads by public authorities in the two subdivisions herein mentioned. The mere recording of the plats has no effect on the title. All of this, however, cannot be determined without further evidence, and it is the duty of the plaintiffs to produce the proof, under the obligation assumed by them, before they can ask enforcement of or relief from their contracts. *Bamberger v. Johnson*, 86 Md. 38, 41, 37 A. 900. If the chancellor finds from further evidence that the two parcels and two plats, now left open, do not materially impair the market value or affect the saleability of the property, then the defendants cannot complain, and they could not then exact any excess in the cost of title insurance from the plaintiffs.

As the defendants suggest in their brief, under section 42, article 5, of the Code, the case will be remanded without affirming or reversing the decree appealed from, for further proceedings by the introduction of further evidence and such amendments of the pleadings as may be necessary to conform with this opinion.

*Case remanded for further proceedings without affirmance or reversal; costs in this court to the appellants.*