(Decided 18th February, 1887.)

---

WILLIAM GILMOR HOFFMAN, Jr. *vs.* WILLIAM GIL-MOR HOFFMAN, ROBERT G. HOFFMAN and CHARLES. HOFFMAN, Executors.

*Will—Construction—Power of Executors to sell Real Estate.*

A testatrix devised her estate, both real and personal, to her four children in equal proportions, but no part of it was specifically devised. By a codicil to her will, the testatrix authorized her executors to sell the whole or any part of her real estate, in their discretion, the proceeds of sale or sales to be disposed of by them under the directions contained in the will. A part of the real estate was sold by the executors, but the purchaser declined to. accept a deed therefor upon the ground that the executors could not give him a perfect title; that having finally settled the estate of their testatrix and made a final distribution in the Orphans'' Court before the agreement to sell was entered into, they had no power to sell. HELD:

That the power of the executors to sell the real estate would not. cease with the settlement of the personal estate, but would continue until the whole of the real estate was divided among the: several devisees, either by the act of the parties or by legal proceedings.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The Court below passed a decree requiring the defendant to.

pay to the plaintiffs the sum of $5000, being the purchase money for the lot of ground in the proceedings mentioned, and the plaintiffs upon the payment of said sum of money and their costs, to convey by a deed, duly executed and acknowledged by them as executors of Louisa A. Hoffman, deceased, the lot as aforesaid to the defendant and his heirs; and further requiring the defendant to accept said deed. From this decree the defendant appealed.

The cause was submitted to ALVEY, C. J., STONE, MILLER, and BRYAN, J.

*Robert Riddell Brown,* for the appellant.

The power itself is too indefinite; there is no mention of any purpose for which the land is to be sold; there is no time fixed for its being sold. The property is given to certain parties, and yet an absolutely indefinite power of sale is given to other parties who have no interest in the property itself. Such a power appears so strange, so rare, so liable to cause trouble and confusion, if executed, that the appellant claims that it is void, and that no Court would recognize a deed made under and in pursuance of it.

If the executors intended to exercise their power at all, they should have done so before distributing the estate of the testatrix; having passed their final account, their distribution account in the Orphans' Court, they have nothing more to do with this estate. Any other construction would lead to the manifest absurdity that they would retain an arbitrary power over this real estate all their lives—the real estate would be tied up, for no one would take a title from the devisees, and the sale of the property would depend upon the whim or discretion of the executors, who have no actual interest in the property.

---

Hoffman *vs.* Hoffman.

---

Not only have the executors not sold this property themselves but they have recognized the rights of the devisees thereover, and the said devisees have exercised said rights, certain of them conveying their portion to the others of them; and this deed between said devisees of this property is on record, and is at least a cloud on the title.

*David Stewart*, and *John Stewart*, for the appellees.

The appellees have, by the clause of the codicil set forth in the bill of complaint, full power to sell and convey the lot in question; and, as this power is a mere collateral power, no act of theirs or of any one else can have deprived them of the right of executing it. A power is given them by the will. The language is sufficient. There are three things requisite to create a power, sufficient words to denote an intention to create one, an apt instrument, and a proper object. *Farwell on Powers*, 29. The words used in the will certainly show that the testatrix meant to give the executors a power, and the will is certainly an apt instrument; but it is said that there is no purpose mentioned, or time fixed. There is no need of the naming of a purpose—the purpose is left to the discretion of the executors, and so is the time; such powers are common and their validity is constantly recognized. See *Smithers vs. Hooper*, 23 *Md.*, 273, 285; *Atwater vs. Perkins*, 51 *Conn.*, 188; *Cooke vs. Platt*, 98 *N. Y.*, 35; *Hertel vs. Van Buren*, 3 *Edw. Ch.*, 20; *Leggett vs. Hunter*, 19 *N. Y.*, 445; *Paschall's Est.*, 14 *Phila.*, 242.

But the purpose of the testatrix is plain: to avoid troublesome proceedings in case a sale of her land should become desirable.

The executors' power is a mere collateral power. The executors have no interest in the land; the whole estate is in the devisees, who have the right of possession *et cetera*. The objection made by the appellant to this

Hoffman *vs.* Hoffman.

state of things applies to all collateral 'powers; such powers may produce annoyance and confusion, a person may be foolish to create such powers, but they are nevertheless valid. *Farwell on Powers*, 51; *Sugden on Powers*, 112, 113; *Reid vs. Gordon*, 35 *Md.*, 174; *Jenifer vs. Beard*, 4 *Har. & McH.*, 73; *Guyer vs. Maynard*, 6 *Gill & J.*, 420.

A mere collateral power cannot be extinguished or released by any act of the donee or any other person. *Farwell on Powers*, 12, 13; *Sugden on Powers*, 49, 50; *Digge's Case*, 1 *Coke Rep.*, 157a, cited in *Sugden on Powers*, 893; *Willis vs. Shorral*, 1 *Atk.*, 474; *Tudor's Lead. Cases*, 374, 377; 2 *Wash. Real Prop.*, 643; *Tainter vs. Clark*, 13 *Met.*, 220, 227; *Mower vs. Orr*, 7 *Hare*, 473.

The executors' power in this case cannot be extinguished by their delay or their passing accounts in the Orphans' Court. This is a plain deduction from the principle set forth above. The executors distributed all the money they had, but why should this prevent them from selling property if the occasion should arise? The testatrix evidently did not expect all their duties to have terminated by this time, for she provides for the payment by them of a certain amount annually for life to a person who is still living. In one case executors waited sixteen years before executing a power of this kind. *Paschall's Est.*, 14 *Phila.*, 242.

STONE, J., delivered the opinion of the Court.

The bill in this case was filed by the executors of Louisa A. Hoffman, for the specific performance of an agreement that they allege they made with William Gilmor Hoffman, Jr., for the sale of a lot of ground in Baltimore City.

The defence set up by the respondent is that the executors having finally settled the estate of their testatrix, and made a final distribution in the Orphans' Court

before the agreement to sell, have no power now at least, to sell the real estate of their testatrix, and cannot therefore give the respondent a good title. That by the will, the exercise of the power was limited to the time of the final settlement of the estate, and no longer. This is the principal defence, and the only one we deem it necessary to notice.

The admitted facts that have any material bearing upon the case are these. That Louisa A. Hoffman at the time of her death, had a perfect title to the lot in controversy. That some of the real estate left by the testatrix has been partitioned in a suit in equity between her devisees, but that said suit did not include said lot, and her *executors* were not parties to such suit *as executors*. That the devisees of one-fourth of the real estate left by said testatrix by a deed, to which said *executors, as executors,* were not parties, have granted all their interest in said lot to the devisees of the other three-fourths of the real estate. That the executors have passed a final distribution account in the Orphans' Court.

The only question in this case is whether the executors named in said will *can now,* under the power contained therein, give a good title to this lot of ground of which their testatrix died seized.

Mrs. Louisa A. Hoffman died in 1879, having duly executed her last will with two codicils thereto also properly executed. The second and last codicil, executed in March, 1879, and under which the complainants claim the power to make this sale, is in these words:

"I hereby authorize the executors named in my last will and testament to sell the whole of, or any part of my real estate, in their discretion, the proceeds of *sale or sales to be disposed of by them under the directions* of my said last will and testament."

The controlling element in the construction of all wills is the intention of the testator, to be gathered from the

whole instrument with the surrounding circumstances. The first and most important question in this case then is, whether the testatrix did intend that the power that she gave to her executors to sell any or all of her real estate, should extend indefinitely, or during their lives, or that it should be restricted to the period that they were performing the ordinary legal duties of executors in settling up her personal estate.

The testatrix, Louisa A. Hoffman, seems to have died seized and possessed of a large estate, both real and personal. This estate, both real and personal, she devised to her four children, in equal proportions. To one of them, (Robert,) the devise is as follows:

"I give, devise and bequeath to my son, Robert G. Hoffman, *one-fourth* of my estate, real, personal and mixed, to him, *his heirs*, executors and administrators."

The devise to Charles, another son, is as follows:

"I give, devise and bequeath the *remaining fourth* of my estate, real, personal and mixed, to my son, Charles Hoffman, to him, his heirs, executors and administrators."

She gives one other fourth to her daughter, Mrs. Riach, and also one-fourth to her daughter-in-law, Mrs. Julia Hoffman. The devises to her daughter and daughter-in-law create some life estates and contingent remainders over, not necessary to construe or refer to except as hereafter mentioned.

It will be seen from this brief statement of the contents of the will, that no property was *specifically* devised, and that *perfect equality* among her four children was the aim of the testatrix. It will readily be seen that to obtain this *perfect equality* in the shares to her several children, a sale of some of the real estate might be necessary. Her real estate might not have been susceptible of division into *four equal parts*, without a sale of some of it, to say the least. Indeed, it would have been a rather unusual circumstance, if the testatrix had died seized of four pieces of real estate of the

*same value,* and which could have been divided equally among the four devisees. This, of itself, suggests a reason why the testatrix might have lodged this power of sale in the hands of her executors by a codicil made several years after the will. It might, as it likely would, in order to effect the equality of the division of the real estate, have been necessary to sell some of it. Ordinarily, this sale could only be made through a Court of law or equity, unless by agreement among the parties, and the sale by the executors would be a less cumbersome mode of procedure.

But by the first codicil, the testatrix left to her son-in-law, Mr. Riach, if he survived her daughter, the sum of twenty thousand dollars for his life, and provided that the interest should be paid over to him, semi-annually, by her executors. But this sum was to be raised out of her daughter, Mrs. Riach's portion, and undoubtedly her executors were charged with this duty. What was the duty of the executors in view of this possible contingency, it is not for us, in this case, to say; but we may say that the duty of the executors, whatever it was, under that codicil, was confined entirely to the fourth of her estate that she had given her daughter, Mrs. Riach, and did not extend to the residue of her estate.

The codicil itself, we think, throws much light upon the proper construction of the will. It provides that "the proceeds of sale or sales to be disposed of by them, under the directions of my last will and testament." This direction strongly supports the construction we have given to the will and codicil taken, as they must be as one instrument, and construed together. The testatrix evidently did not intend her estate to be held by all her children as tenants in common, but she looked forward to a division among them, and it was to facilitate this division, that, we think, the codicil was made.

Upon the whole will and codicil, we cannot think that it was the intention of the testatrix to allow her execu-

tors, for all time and at their own whim and caprice, to seize and sell property that she had just given to her children in fee, the consequence of which would be to cloud their titles, and hamper the alienation by them of their own property; and all these grave consequences would be produced without any assigned or assignable motive.

The power of sale of real estate is not unfrequently given to executors, but it is generally limited in point of time, or for a specific purpose. In this case we have indicated what, in our opinion, was the purpose for which this power was given, but it is necessary further to consider within what time that power should be exercised.

It will readily be perceived that the *personal estate* of the testatrix may have been distributed, and finally settled before a final division of the real estate could be made. In that event, the power of the executors to sell the real estate, would not cease with the settlement of the personal estate, but would continue until the whole of the real estate was divided among the several devisees; that is to say, that the power of sale exists over *any part* of the real estate that is still undivided, but ceases upon its allotment, either by the act of the parties or by legal proceedings, to the devisee.

But the statement of facts in this case does not inform us with certainty whether the property in dispute has been divided or not. The statement shows that one of the devisees has sold his interest in it, but does not show whether it has been allotted to and taken by any of the devisees. If it remains undivided, the sale made by the executors will convey a valid title, but until that fact is ascertained, no final decree can be passed. We will, therefore, without affirming or reversing the decree appealed from, remand the cause under section 28, of Article 5, of the Code, that proof may be taken, and a final

decre passed by the Circuit Court in conformity with this opinion.

*Cause remanded.*

(Decided 18th February, 1887.)