# CHARLES O. CACY

## *vs.*

## WILLIAM M. SLAY ET AL.

*Mortgages: payment; bill to compel release; burden of proof; mortgage notes; presumption as to; Code, Article 66, section 25, not retroactive. Witnesses: competency; other party dead. Administrators: duty of—.*

The presumption of payment in favor of a mortgagor in possession for over 20 years is not conclusive.      p. 497

When relief is sought by a bill in equity to compel the release of a mortgage, on the ground of payment, an *allegation* of payment is insufficient, and must be supported by proof.

p. 498

On appeal from a decree refusing to direct the execution of a release of a mortgage, alleged to have been long overdue, etc., the cause was remanded, under section 38 of Article 5 of the Code, without reversing or affirming the decree, for further proceedings; it being: *Held,* that there was not sufficient evidence to justify action on the bill.      p. 501

Section 25 of Article 66 of the Code, providing that the recorded release of a mortgage shall cause it to be conclusively presumed that the notes secured thereby are paid, so far as any lien on the property is concerned, is not retroactive.      p. 499

The statute, section 3 of Article 35 of the Code, excluding the evidence of one party to a transaction, when the other party is dead, was passed to prevent injustice being done, and not to cause it.      p. 501

An administrator must see that the estate of his decedent is protected from unjust claims, but it is also his duty to aid in reaching a just conclusion as to them.      p. 501

*Decided January 14th, 1916.*

494        CACY *vs.* SLAY.

Appeal from the Circuit Court for Kent County. In Equity. (HOPPER and ADKINS, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*L. Wethered Barroll* (with whom were *Hope H. Barroll* and *Robert J. Gill* on the brief), for the appellant.

*Lewin W. Wickes* (with a brief by *William M. Slay*), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

A bill in equity was filed in this case by the appellant against the executors of Richard D. Hynson, deceased, and Edwin L. Maslin. It alleges that the appellant executed a mortgage to Edwin L. Maslin on May 17, 1889, to secure the sum of $600.00, for which five promissory notes were given, one for the principal, payable two years after date, and the other four being interest notes, one of which was payable every six months. The mortgage was on two farms in Kent County and one in Queen Anne's County. The bill further alleges that the loan was secured through Richard D. Hynson, who was at the time the appellant's attorney and drew the mortgage; that the plaintiff paid the loan to said Hynson, who was also attorney for Maslin, and he believed that the mortgage had been released by said Hynson, who told him that he would see that it was released, and who had received every dollar of the principal and interest secured by the mortgage; that in the early part of 1914, he attempted to get a loan on the farm in Queen Anne's County, when he was informed by the attorney examining the title that the Maslin mortgage remained a lien of record on said farm, and although twenty-one years old and paid by the appellant to Mr. Hynson, a loan was refused until the record was cleared of

said mortgage; that he saw Maslin who said he did not remember the occurrence, and informed the appellant he would have to consult his attorney before he could tell him anything more about it, but he had been paid in full by Richard D. Hynson, and subsequently informed the appellant's attorney that he had made an assignment of the mortgage to Mr. Hynson and he could not remember any of the particulars concerning it; that he was advised by his attorney that he would have to apply to the administrators of Richard D. Hynson, who died in 1907, and ask them to release the mortgage; that he saw William M. Slay, one of the administrators, and was informed by him that they would not release the mortgage; that he was in ignorance of any claim made by said Hynson in his lifetime, or by his administrators until informed by Mr. Slay that they claimed the debt was due; that he denies any and all indebtedness claimed by the administrators, but avers that if there ever was any such indebtedness due by him to said Hynson, it had been fully satisfied and discharged by payment to said Hynson in his lifetime; that if said Hynson or his administrators had any cause of action against him for any of the indebtedness claimed to be due under the mortgage, which he does not admit, such cause of action or suit did accrue or arise over twenty years before the filing of the bill and he prays the benefit of the statute of limitations; that said Hynson never made any demand upon him in his life time for any part of the debt or interest from the time it was paid until his death in 1907, and none of the defendants as administrators made any claim or demand upon him until the refusal of said Slay to release the mortgage, who stated that the estate would claim that it was a just debt due by appellant.

The bill prays: (1) That the mortgage lien be removed "as a blot" from his title to the farm in Queen Anne's County, and from the lands in Kent County; (2) that a decree be passed ordering and directing the administrators to execute a valid release; (3) that in the event of their refusal to release the mortgage a trustee be appointed to release said

mortgage lien of record in Queen Anne's County, and (4)
for general relief. The answer denies most of the material
allegations of the bill, including the alleged payment of the
mortgage.

The appellant was called as a witness in his own behalf,
and exceptions were filed to most of the questions in chief
asked him, on the ground that he was incompetent under the
statute to testify. He is, under section 3 of Article 35 of
the Code, incompetent to testify "to any transaction had
with, or statement made by, the testator, intestate, ancestor,
or party so incompetent to testify, either personally or
through an agent since dead, lunatic or insane, unless called
to testify by the opposite party," etc. There can, therefore,
be no doubt that most of his evidence—practically all of it
that is material—must be excluded. It is said by the appel-
lant's solicitors that he can testify as to admissions by Mr.
Maslin, as he is still living, but the difficulty about that is
that the bill alleges that Mr. Maslin had told appellant's
attorney that he had assigned the mortgage to Mr. Hynson.
If that be correct, and there is nothing to show that it is not,
the administrators of Hynson can not be bound by statements
or admissions made by Maslin after he assigned the mort-
gage. Why the appellant did not call him as a witness is not
shown, but he was not called, and if he knows any facts mate-
rial to the case, the Court is left in the dark as to his knowl-
edge. The plaintiff's evidence as to what occurred between
him and Mr. Slay throws but little light on the question,
although he was competent to testify as to that. Mr. Slay is
not incompetent as a witness because he is one of the admin-
istrators of Mr. Hynson, as the appellant contends. At one
time such was the statute, subject to certain exceptions, but
that has long since been changed. The difficulty is that Mr.
Slay has no personal knowledge of the original transaction,
and he does not know whether or not the mortgage was in
fact paid. He did testify that he as administrator had this
mortgage in his possession for some time, but can not now
find it and does not know what became of it. Then his testi-

mony as to what he found in Mr. Hynson's check book, in answer to the general interrogatory, was not excepted to and has some relevancy to the matter in issue. He said: "And perhaps I had as well give the literal copy of Mr. Hynson's check-book stub, which is as follows: 'Jan. 23, 1893. To Chas. T. Westcott, for Maslin mortgage, $600.00, and interest paid by Miss Julia Cacy, $18—$618.00.' " That looks as if Mr. Hynson made out his check to Mr. Westcott for that mortgage, but whether the check was delivered and paid, or, if it was, why he paid Mr. Westcott for it, or whether Mr. Hynson was taking an assignment of the mortgage or paying it off, we are not informed. Mr. Westcott may have been acting as attorney for someone in receiving it, and Mr. Hynson may have been so acting in paying it. Apparently, Miss Julia Cacy had at least $18.00 in it.

The difficulty is that we have no evidence before us to show that the appellant ever paid the mortgage, for when his testimony on that subject is excluded, as it must be, there is nothing to sustain his bill in that respect. Mr. Hynson died June, 1907—fourteen years after the transaction above referred to, when his check book shows he made out a check to Mr. Westcott, and only seven years before this bill was filed. If that memorandum is accepted as evidence to show that Mr. Hynson obtained the mortgage, it is also evidence of the fact that it was not paid up to that time, although nearly two years overdue. But there is nothing to show that the appellant did not make some payment or payments on the interest or principal within twenty years before the bill was filed. So far as we know, he might have done so shortly before the death of Mr. Hynson. As was said in *Brown* v. *Hardcastle,* 63 Md. 484: "The presumption of payment in favor of a mortgagor in possession over twenty years is not conclusive, but may be rebutted by evidence of part payment of principal or interest, or by admissions of the debt's existence or other circumstances from which it may be inferred the debt has not been paid. In other words, a rec-

ognition of the mortgage debt involving a promise to pay it will remove the bar of the statute of limitations." The Court quoted from *Stump et al.* v. *Henry et al.,* 6 Md. 209, that "payment of part of a mortgage will prevent it from being barred by limitations for twenty years afterwards, although the mortgagor may have been in possession for nineteen years and upwards prior to the payment." A number of other cases in this State are to the same effect as those mentioned.

It is true that, such being the law, it may be all the more necessary for a mortgagor to have a mortgage released, if he had paid it, as no one examining the title would treat the mortgage as paid merely because the twenty years had elapsed since it matured, but the appellant overlooks the fact that he is now asking the Court for affirmative relief. When he comes into a Court of Equity to compel a release of the mortgage, he must not only allege, as he did, but must prove that the mortgage has been paid, or at least that he is entitled to have it released by those he proceeds against. The appellant places great reliance upon *Baldwin* v. *Trimble,* 85 Md. 396, but that was a very different case from this. There a vendee was resisting a bill for specific performance on the ground that the title of the vendor was not merchantable. Amongst other defences which he relied on was a deed of trust which was on record. This Court held that it must be treated as a mortgage, and, through CHIEF JUDGE MC-SHERRY, said that "as *thirty* years have intervened between the maturity of the mortgage and now, without recognition of its being a subsisting lien, the bar is absolute and complete." It was held that it was not a cloud on the title, but the owner of the property was not seeking the affirmative relief of asking that the mortgage be released. Moreover, there is nothing in this case to show that the mortgage was *"without recognition of its being a subsisting lien."* All that we have before us is a certified copy of a mortgage which matured twenty-three years before it was filed in this case,

but which, the little evidence which is before us tends to show, was in force at least two years after it matured.

But, regardless of that, what is there to show that the administrators have any right, much less that it is their duty, to release the mortgage? We can not be certain from this record that Mr. Hynson ever owned it. There is no assignment of it before us, and presumably there is none on the record, as the copy filed does not show any. CHIEF JUDGE McSHERRY said, in *Demuth* v. *Old Town Bank,* 85 Md. 315, that prior to the Act of 1892, Chapter 392 (which does not apply to this case), the law of this State was and still is, unless subject to that Act, "that the indorsement or assignment of a promissory note secured by a mortgage gives to a *bona fide* holder of such note the benefit of the lien of the mortgage as fully as though he had been named as the actual mortgagee; and this, too, though the public records furnish no evidence of the indorsement or transfer and delivery of the note. The transfer or indorsement of the note, which is the principal, carries the mortgage, which is the incident, and effectually clothes the *bona fide* holder of the note with the lien of the mortgage itself." Again JUDGE McSHERRY said: "From the moment of that indorsement and delivery, it ceased to be in the power of Price to release the mortgage so as to deprive the bank, by which the note was held, of the benefit of its security under the mortgage." Price was the mortgagee in the mortgage involved in that case. That was changed by the Act of 1892, which was amended by Chapter 719 of the Act of 1910, being now section 25 of Article 66 of the Code, but this mortgage was given in 1889 and the statute is not applicable.

The note for the principal is not accounted for in any way, although possibly it was not assigned to the person to whom the mortgage was assigned. The bill alleges that Mr. Maslin said he assigned the mortgage to Mr. Hynson, but, if he did, then the memorandum in Mr. Hynson's check book is peculiar—unless it be that Mr. Hynson first assigned it to Mr. Westcott, and the latter afterwards reassigned it to

Mr. Hynson.  There is a statement in Mr. Collins' evidence to the effect that J. P. Ahern said that W. W. Beck told him that the mortgage had been transferred by Maslin to Charles T. Westcott, and by him to Hynson, but that is purely hearsay.

But notwithstanding what we have said, there are several things in the record which lead us to believe that it may be possible to obtain more evidence than is before us, and as it may do a great injury to the appellant if the mortgage is not released, if he has in fact paid it, we have concluded to remand the case without affirming or reversing the decree, in order that he may have an opportunity to produce more testimony, if possible.  Of course, he can call Mr. Maslin and Mr. Slay, if he desires, and could still rebut their testimony, if he has the evidence, under Section 5 of Article 35. The administrators should do everything possible to get at the actual facts.  As Mr. Slay testified that he had this mortgage in his possession at one time, he may be able to find it, on making a more thorough search for it, or he may be at least able to state more definitely whether there was an assignment on it, and, if so, from whom to whom, etc.  With his testimony-in-chief he filed what he said was a part of the letter he wrote to Mr. Cacy on May 15, 1914, and testified that the facts therein stated are true and correct.  Amongst other things contained in that paper are the following: "Mr. Hynson never got the Maslin mortgage until January 23, 1893, when he paid Chas. Westcott and took an assignment of the same to prevent Mr. Westcott from selling the Queen Anne's farm, and the Hynson estate still holds both mortgages with a credit on them much less than twenty years old.  He advanced these sums to you solely to accommodate you and keep your lands from being sold and yet you claim to have paid him who never pressed a man in his life except where it was absolutely necessary to save his money, then only in rare cases."  If such are the facts, legal evidence of them should be produced, but of course that memorandum of what Mr. Slay wrote to Mr. Cacy is not evidence on his own offer.

We have determined upon the course we will adopt in this case because we hope, to use the language of the statute, Section 38 of Article 5, that "the purposes of justice will be advanced by permitting further proceedings in the cause," but we are aware that it will depend largely upon the parties, or their attorneys, as to how far that much to be desired end will be accomplished  There is ordinarily but little reason for controversies of this character in Court, if both parties only want what they believe they are entitled to.   The attorneys ought to be able to get the actual facts, if they make the proper effort to do so, and should not be governed too much by the technical rules of law in an honest effort to ascertain the truth in reference to matters which occurred so long ago. The statute is wise in excluding the evidence of one party to a transaction when the other is dead, but it was passed to prevent injustice being done, and not to cause it, if that can be avoided.   Of course, the administrators must see that the estate of their decedent is protected from unjust claims, but it is also their duty to aid in reaching a just conclusion, as they have under their control the books and papers of their intestate, to which the opposite party has not equal access. On the other hand, a plaintiff seeking such relief as this one is ought not to be overly technical about the use of the books and papers of the decedent which may reflect on the question.   If the attorneys will approach the case in that spirit, we feel confident that a just conclusion will more surely be reached than by disposing of it on such a record as is now before us.

> *Cause remanded, without reversing or affirm-*
> *ing the decree, for further proceedings, in*
> *accordance with this opinion.*