HOWARD H. MUSCH *v.* WILLIAM J. UNDERWOOD

MARIE M. MUSCH *v.* SAME

[Nos. 15, 16, April Term, 1941.]

*Decided May 1st, 1941.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Joseph Loeffler*, for the appellants.

*T. Bayard Williams, Jr.*, with whom was *W. LeRoy Ortel* on the brief, for the appellee.

FORSYTHE, J., delivered the opinion of the Court.

The record in this case contains two appeals. William J. Underwood, administrator of the estate of Mary M. Musch, deceased, filed a bill of complaint against Howard H. Musch and Marie M. Musch, his wife. Each of the defendants filed a demurrer to the bill. The Circuit Court of Baltimore City overruled the demurrers, and these appeals were entered.

The bill of complaint alleges that Mary M. Musch, a widow, sixty two years of age died intestate, on April 8th, 1940. She left as her only heirs and next of kin, a son, the defendant Howard H. Musch, and a daughter, Alice Marie Underwood, who since has died, leaving a husband, the complainant, William J. Underwood, and an infant daughter, Charlotte Underwood.

It is then alleged that, for more than twenty years prior to July, 1939, Mary M. Musch owned and lived in her home at 2822 O'Donnell Street, Baltimore City. Her son, Howard, lived with her until July, 1939, when he removed her to a new home he had purchased at 2704 Pelham Avenue, where she continued to live with him until her death in 1940. In July, 1939, Howard H. Musch married Marie M. Musch.

The bill further alleges that for more than five years prior to her death, Mary M. Musch was in bad health, and in 1937, became very ill, and was confined to her bed with dropsy and heart trouble for approximately six to nine months, and remained a very sick woman from that time until her death in April, 1940. That in

July, 1939, she sold her O'Donnell Street home for the sum of $1200. Continuing, the bill alleges that on May 9th, 1940, which was shortly after Mary M. Musch's death, counsel for the complainant called upon Howard H. Musch, who advised counsel "that he had his mother's estate, which consisted of approximately $1500 in the Canton National Bank, about $500 from the Metropolitan Life Insurance Company, and the proceeds of the sale of 2822 O'Donnell Street, about $1200, and $100 in another bank; and that he and his said wife, Marie M. Musch, had used all the money in the mother's estate, prior to her death, to purchase his home, 2704 Pelham Avenue, in July, 1939, which was loaned to him by his mother, Mary M. Musch; and that it was the mother's wish that her estate be divided between him and his sister, Alice Marie Underwood, but now that Alice Marie Underwood had died, he did not believe her husband, William J. Underwood, should get any of the estate, and that he, therefore, intended to set up a trust fund of Alice Marie Underwood's one-half share for her infant daughter, Charlotte Underwood, which he would not be able to do until he could arrange a loan on his home, which would require several weeks."

After those allegations the eleventh paragraph of the bill is as follows: "That Howard H. Musch, and Marie M. Musch, his wife, did by fraud and undue influence practiced upon Mary M. Musch, when she was ill with dropsy and heart trouble, and other ailments, caused her to loan the said Howard H. Musch and Marie M. Musch, his wife, the said sums of money and her entire estate, to all of which they, Howard H. Musch and Marie M. Musch, his wife, now claim title with the intent to defraud your Petitioner of the funds and estate of Alice Marie Underwood, deceased, her heirs and next of kin."

The bill then prays that the above mentioned sums of money be declared the property of the estate of Mary M. Musch, and "that a lien be declared in favor of the Petitioner against No. 2704 Pelham Avenue for the sum of money which the Court might find was the property

of Mary M. Musch, and used for the purchase of said house." The bill seeks discovery of the names of banks and insurance companies; of the selling price of 2822 O'Donnell Street; of the amount of money received from the Metropolitan Insurance Company, and of all banks or institutions in which Mary M. Musch had money.

Both demurrers are upon the grounds that there is a full and adequate remedy at law; that the bill fails to contain sufficient specifications of fraud, or undue influence; that the court is without jurisdiction, and the allegations of the bill are too vague, uncertain, and indefinite.

The bill in this case is for discovery and relief, under the general equitable powers of a court of chancery. Since it is true that the original jurisdiction of a court of equity has not been abolished in this state by statutory provisions providing, in particular cases, for the production of certain books, papers, and other information, the broad statutory remedies have greatly lessened the use of bills for discovery. There are cases involving accounting between partners, or persons jointly engaged in some enterprise, from the nature of which it would be impossible for a party to obtain the facts necessary to maintain his cause, and equity will then entertain a bill for discovery, but the sufficiency of such a bill must depend upon the nature of its averments and object when considered in connection with the established principles of equity. *Hill v. Pinder*, 150 Md. 397, 133 A. 134; *Seeley v. Dunlop*, 157 Md. 378, 146 A. 271.

It must be observed that the bill in this case contains specific allegations of certain sums of money due the estate of Mary M. Musch, and names a bank and an insurance company in which she had funds. Also, it alleges that this direct and specific information was given by the defendant Howard H. Musch, coupled with an admission that the various sums specified in the bill belonged to his mother's estate, and that it had been loaned to him, and how he proposed to repay his sister's share. In possession of that information and admission, it would

seem unnecessary to invoke the jurisdiction of equity by way of a bill for discovery.

The bill clearly and directly alleges that the money was a loan to the defendants. The cause of action is clearly and primarily a legal one, arising from the failure to repay the money loaned. The doctrine is well settled in this state that where a party has a certain, complete and adequate remedy at law, he cannot sue in equity. *Becker v. Lipps Co.,* 131 Md. 301. The discovery sought by the bill is available under the Code, art. 75, sec. 106 and 107, in a court of law in as ample manner as in a court of equity.

The bill does not allege any facts that could be held in equity as creating any lien on the Pelham avenue property. It is not alleged that the property was to be purchased for Mary M. Musch, or that it was to be considered as security for the loan. *McIntyre v. Smith,* 154 Md. 660.

For the reasons stated, the bill of complaint in this case does not present a case which entitled to the appellee to the relief he seeks in a court of equity. His remedy is clearly by an action in a court of law.

The demurrers should have been sustained, and the bill dismissed without prejudice. The orders appealed from will accordingly be reversed.

> *Orders reversed and bill dismissed without prejudice. Costs to be paid by the appellees.*