## ETHEL YOUNG *v.* MARGARET WEAVER, ET AL.

[No. 33, October Term, 1945.]

*Decided November 30, 1945.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*D. J. Musacchio* and *Gerald Monsman* for the appellant.

*Harry B. Wolf, Jr.,* with whom was *Philip V. Hendelberg* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is a case involving the custody of William Franklin Tyler, fifteen years of age.

About the year 1925, Leonidas Tyler married Margaret Moody. At that time she was fifteen years of age and he was twenty years old. As a result of that marriage two children were born, Conrad Tyler, sixteen years of age, and William Franklin Tyler, fifteen years of age at the time of this suit. When William was six months old the parents separated. Mrs. Weaver, formerly Margaret Tyler, says this separation was caused by Mrs. Young, appellant, and her mother. After the separation Leonidas Tyler contributed something to the support of his wife and young children for about three months. After he discontinued these payments, the children were placed in the home of Mrs. Ethel Young, Mr. Tyler's cousin, and her husband in Anne Arundel County. According to the report of the Anne Arundel County Welfare Board, Margaret Tyler at that time ran off and left the two children in a furnished room. In 1932 an agreement was entered into between the Tylers and the Youngs, which the Youngs thought was an adoption agreement, whereby the Youngs were to have custody of the children until they were twenty-one years of age and were to maintain them and provide for their education.

Margaret Tyler obtained a divorce from Leonidas Tyler at which time the custody of the children by decree was given to Mr. and Mrs. Young. On the next day, December 28, 1934, Margaret Tyler, married Charles

Weaver. No children have been born to this couple.

The Tyler children lived in the Young home until February, 1941, when the mother took the older boy, Conrad, to live with her and her husband, Charles M. Weaver. She says that she tried to get William at that time, but Mrs. Young would not let her have him.

In June, 1941, Mr. Young died and in October of that year Ethel Young, the appellant, moved to Baltimore City with William Tyler to keep house for her niece, a Mrs. Ziegler, and her small daughter. Mrs. Ziegler with whom William and Mrs. Young lived for about eighteen months when asked about Mrs. Young's discipline of William Tyler, his adjustment in her home, and whether his behavior was satisfactory, would "say nothing about that." In May, 1944, the niece moved to Towson and Mrs. Young then applied to the Department of Public Welfare for relief. That agency required Mrs. Young to file a complaint against the father, Leonidas Tyler, for non-support of his child, William Tyler. The father then contacted his former wife, Margaret Weaver, telling her of that action. Mrs. Weaver stated that it would not be necessary for her former husband to support the boy, as her present husband could provide adequately for him in their home. Mrs. Young resented this action, cited the custody agreement, and refused to allow William to be taken by his mother.

As a result of this action, a petition was filed in Circuit Court No. 2, of Baltimore City, by Margaret Weaver and Charles Weaver, her husband, reciting the Tyler divorce, the fact that the custody of the Tyler children was awarded to Mrs. Ethel Young, that the petitioners were financially able at that time to support these children, that the said Ethel Young was fifty-five years of age with no means of employment or support, and asking the Court that the custody of both infants be given to them. After answer filed by Ethel Young and hearing in open court and after investigation and reports filed by the Probation Department of the Supreme Bench of Baltimore City and the Anne Arundel County Welfare Board,

the custody of William Tyler and Conrad Tyler was awarded to the mother, Margaret Weaver, and the Tyler divorce decree was modified to that effect. It was further ordered that Ethel Young should have the right to see these children at reasonable times subject to the further order of the Court. From that decree an appeal is taken here. No contention is made by the appellant as to the custody of the older child, Conrad Tyler, and the appeal as to that part of the decree is abandoned. The question before this Court is the custody of the younger child, William Tyler.

The law on this case is clear and well defined. The sole question is the welfare of the child. *Piotrowski v. State ex rel. Kowalek*, 179 Md. 377, 18 A. 2d 199; *Dietrich v. Anderson*, 185 Md. 103, 43 A. 2d 186; *Cockerham v. Children's Aid Society of Cecil County*, 185 Md. 97, 43 A. 2d 197.

At the present time, the father, Leonidas Tyler, has remarried and has a family of his own and is in no position to have custody of his child.

Mr. Weaver, thirty-one years of age, a first class pipe-fitter and of good character, has been in the employ of the Bethlehem-Fairfield Shipyard for the past three years with a weekly salary of $84. The Weavers own a three-story house on which part of the purchase price is now owing, but being paid. Conrad sleeps in a bedroom on the second floor which contains twin beds, in one of which the Weavers expect William to sleep if his custody is awarded to them. Although the living quarters are clean and adequately furnished the general appearance of the living quarters of the house is one of disorder. The Weavers own an automobile on which a large sum is due and carry some insurance and own $500 in war bonds. Mrs. Weaver is a heavily built, dark-haired, young woman, quick tempered and has been arrested five times, charged with being disorderly and twice with assault. In each instance the case was dismissed. Ever since the children have been in Mrs. Young's custody, she has visited them from time to time, bringing them small gifts and

clothing, but giving very little financial aid. She says at one time she was driven off the Young place by Mr. Young with a shotgun. The older boy, Conrad, is healthy, dresses neatly, takes pride in his personal appearance and, according to his stepfather, is obedient. The Probation Department reports that he gave the impression of an average young man of dull mentality, fond of his work, and anxious to enlist in the U. S. Navy. He never wants to return to the home of Mrs. Young as he claims William was the favorite there. The relationship between the stepfather and Conrad is said to be good and the home life very satisfactory.

Mrs. Young is a widow of fifty-five years of age, and a diabetic. She and William have a two-room apartment in Baltimore City. In the bedroom is a double bed and a cot, and according to the testimony of Mrs. Weaver at the time of the hearing Mrs. Young and William were occupying the same bed. She denies this and says that William sleeps on the cot. Mrs. Young pays $8.50 a week as rent. She was formerly married to Laird H. Vinton, from whom she was divorced and has a son, Harry O. Vinton, who was inducted in the U. S. Army and allots his mother $68 monthly. Previous to this allotment she received $80.21 monthly from the Public Welfare. William works after school for a used car dealer and earns $10 or $12 weekly. His employer and associates there say he is willing, mechanically inclined, eager to learn, and honest. At the time of the hearing the income of the Young home would average $118 monthly.

Mrs. Young says her son was no problem until he was married. Since that time he has served five days in jail for violation of the automobile law, was sentenced to five years in the Maryland House of Correction for burglary and larceny and ran away before receiving his parole papers. He was again arrested and sentenced to five years in the Maryland Penitentiary for burglary. In January, 1945, he was paroled for Selective Service and inducted into the U. S. Army.

William Tyler has always been given preferred attention and consideration in the Young home. Mrs. Young admits that he was always her favorite and apparently she has made him completely dependent upon her. He attends public school where his marks are poor and unsatisfactory, and the teachers designate him as impudent, slick, and surly, but honest. He is anxious to work and says that he would be willing to contribute the greater portion of his earnings to the support of Mrs. Young. He is always dressed neatly, well cared for, and impressed the investigator of the Baltimore Probation Department as courteous in his manner. The Probation Department feels that he is given too much consideration by Mrs. Young, has no older man to guide and counsel him, and is thoroughly spoiled by her. Practically all of the witnesses say he is indulged too much by Mrs. Young. She claims that custody of William is being sought by the Weavers because he will soon be self-supporting. She has no plan for the future as to support.

The Probation Department of Baltimore City feels that he would be better off in the home of his mother where he will have the companionship of his brother, the guidance and counsel of his stepfather, who is reported to be an upright man. He would also have the association of his maternal grandmother, a practical nurse of common sense and intelligent, and his three first cousins. The Weaver home is comfortable but the neighborhood has deteriorated. The Anne Arundel County Welfare Board, who contributed to the Young family from 1941 to 1943, during that time did not find any evidence of Mrs. Young being unable to discipline the boys or that she has ever neglected or abused them on any occasion, further that she kept an adequate home for them and strove to provide support, food, and clothing. She seemed quite attached to them. William and Conrad always seemed to get along well together. The Anne Arundel Board has not been in touch with the Young family since February 5, 1943. Mrs. Boland, Mrs. Young's aunt and Mr. Tyler's

aunt, testified that the child would be better off with his mother because he needed a man to bring him out.

William who spent his weekends with his mother and stepfather in 1944, desires to remain with Mrs. Young. He accuses his mother and stepfather of drinking, which they deny. The Probation Department states that it is reported that Mrs. Young influences William against his mother and stepfather.

The case at bar has given us much concern. In passing upon questions involving merely the weight of evidence, this Court should hesitate to override the finding of the lower court. This is particularly true in cases of custody, where orders are always open to modification upon change of circumstances. It seems that the mother and stepfather are willing and able to support William and from the fact that Conrad has adjusted well in this home, under ordinary circumstances it would seem that William should make a similar adjustment. On the other hand the financial status, the ability of Mrs. Young to maintain her home, and the results of the return from the Army of her son, are very problematical. We must, however, take into consideration the fact that this boy, now approximately sixteen years of age, is doing part-time work and is very anxious to live with the only mother he has ever known, Mrs. Young. This, of course, may be due, as reported, to the fact that she overindulges him. It seems, however, that his wishes should be given consideration. To place him in a home where he is not happy or satisfied when he wants to live with a person who has done more for him than anyone else, at his age may result in creating discontent and bitterness which may have serious consequences. This boy apparently was never interviewed by the trial judge as to his wishes in the matter or as to his reasons for desiring to remain with Mrs. Young. It appears that no stay of execution of the court decree was asked for or obtained and that, therefore, William has been living in the Weaver home since the decree was passed on March 5, 1945, which has now been a period of almost nine months.

Under the authority contained in Code, 1939, Article 5, Section 42, this Court is of the opinion that, without either reversing or affirming the decree, this case should be remanded for the taking of further testimony as to the adjustment which William has made in the Weaver home during the past nine months, and as to the condition of Mrs. Young which might at any time be materially changed by her son's release from the Army. The trial judge with this additional evidence before him, and after an interrogation of William Tyler, is to pass such further decree as to him may seem proper.

*Cause remanded without affirmance or reversal under Code, Article 5, Section 42, costs to be paid by the appellees.*