LAKE, TRUSTEE *v.* CALLIS ET UX.

[No. 172, October Term, 1952.]

*Decided June 12, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Frank B. Ober,* with whom were *T. Hughlett Henry, Jr.,* and *Herbert F. Murray* on the brief, for the appellant.

*Howard Wood, 3rd* and *Thomas J. Keating, Jr.,* for the appellees.

SOBELOFF, C. J., delivered the opinion of the Court.

A trustee in bankruptcy is here contesting with the bankrupt and his wife for a portion of the cash surrender value of certain insurance policies. Questions involving the law of subrogation, bankruptcy and tenancy by the entirety have been raised. The case had its origin in a mortgage foreclosure proceeding instituted in the Circuit Court for Queen Anne's County.

Originally Eugene M. Callis and his wife, Esther Perry Callis, as tenants by the entireties, owned a large dairy farm, but on January 1, 1949, they conveyed approximately 400 acres of the land to a newly created

corporation called "Kennersley Farm Dairy, Inc.", reserving to themselves a little over six acres improved by a valuable colonial mansion and appurtenant buildings. All the capital stock of Kennersley was issued in the name of Mr. Callis individually. Seeking funds for his corporation to satisfy a $47,000 mortgage and other debts and perhaps also an individual debt of Callis, incurred before the corporation was formed and which it apparently assumed, he applied to the Philadelphia Life Insurance Company for a $150,000 mortgage loan and offered as security the corporate property and certain insurance policies on his life. The policies were made payable at Mr. Callis' death to his wife, but it has been stipulated that they belonged to him. The prospective lender was unwilling, however, to make the loan unless the whole farm, the six acres and the residence belonging to the individuals as well as the land of the corporation, were treated as a unit and included in the mortgage. The application was then revised, Mr. and Mrs. Callis and Kennersley offering to mortgage both farm and home to secure the loan. In granting the application the mortgagee repeated the requirement for the pledging of Mr. Callis' life insurance "as additional collateral".

The mortgage, and the note it secured, dated September 3, 1949, were executed by Kennersley and by Callis and wife. It was recited that the obligation was joint and several and specifically stated that Callis and wife assumed the full obligation as makers. The mortgage expressly stipulated that in case of default sale should be made of the property as a whole, that is to say, the corporation's land and that of Callis and wife were to be offered as a unit. The life insurance policies were not referred to in the mortgage but were assigned to the lender in connection with separate collateral forms.

Mr. Callis, though not his wife, became a bankrupt on August 6, 1951. When an installment fell due on the mortgage debt at the end of that year there was a default. Thereafter the mortgagee assigned its mortgage for foreclosure, and the assignee instituted proceedings on

June 17, 1952, and sold the entire property as a unit for $145,000 on August 4, 1952. The separate order ratifying the sale has not been appealed.

Because there was a resulting deficiency of some $3500, the mortgagee was entitled to resort to the cash surrender value of the bankrupt's life insurance to the extent necessary to discharge the balance of its claim. The pledged policies had a total cash surrender value of about $20,000, and thus a fund of approximately $16,500 remains, and it is over this sum that Callis and wife and Charles M. Lake, trustee of the bankrupt estate, are here litigating.

The appellees filed exceptions opposing the ratification of the sale unless the insurance collateral should be turned over to them, and the appellant filed a petition of intervention in which he claimed the same collateral, or the residual proceeds therefrom, and asserted that the bankruptcy court had exclusive jurisdiction of the controversy. Normally such an issue would be raised not by exceptions to the sale, but by exceptions to an audit. Any procedural irregularity in this regard, however, has been waived by the parties and passed over by the court below inasmuch as the question raised must be dealt with at some stage of the proceedings. The appellees' exceptions were later amended to make claim to the balance of the cash surrender value of the policies, after paying of the deficiency due the lender, rather than to the policies themselves. The Circuit Court held Callis and wife entitled to this balance and directed its ultimate payment by the mortgagee to the appellees. It further ordered the policies in the meantime to be deposited with the Clerk of the Court. From this order the trustee appealed.

The theory upon which the Chancellor decided the case in favor of the appellees is that while Callis and wife signed the note, and mortgaged the property owned by them as tenants by the entireties, they did so as an accomodation for Kennersley and Eugene M. Callis in his individual capacity. The appellees' contention was

that as they were in reality sureties they could show the true situation notwithstanding any other designation of them in the note or in the mortgage, and that when their home was sold to satisfy the obligation of the primary debtors they became subrogated to the mortgagee's rights and were entitled to pay themselves out of what remained of the insurance fund. Their argument, upheld by the Chancellor, was that these proceeds belong to them by the entireties just as the six acres and the home belonged to them and hence the fund in dispute is not an asset of the bankruptcy trustee, even though the bankrupt is one of the tenants by the entireties.

The appellant, on the other hand, first questioned the admissibility of any evidence tending to dispute the recitals in the mortgage document and in the note indicating that the husband and wife were primary debtors and, secondly, he asserted that even if parol evidence may be received to show that they were in fact sureties for the other debtors still the burden of proof resting upon them had not been met.

There was the further argument that even assuming that the appellees were accommodation makers there were "no equities in their favor sufficient to entitle them to subrogation" as against the trustee. In order to raise such equities, the trustee insisted, the appellees should have shown that they did not receive any of the proceeds or benefits of the mortgage loan, directly or indirectly, and in the absence of such proof they could not maintain their claim for subrogation. As to this it was the appellees' position that the burden was on the appellant to prove that they, the appellees, had benefited from the proceeds of the loan, if such were the case. Thus each of the parties relied on the assumption that the burden of proof was on the other, and the detailed facts as to the distribution of the proceeds of the mortgage loan were not developed. As both sides preferred to argue doubtful inferences from facts not proved though available, rather than to prove the facts, the record was left in a very incomplete state.

Do we have in this record an adequate basis for a conclusion that the appellees were sureties and not principal debtors? Certainly the documents offered in evidence declare unequivocally that they are principal debtors and that must be their position vis-a-vis the creditor. As between the debtors themselves they are permitted to show by parol testimony that in fact a different relationship existed. *Snook v. Munday,* 96 Md. 514, 45 A. 1004. The appellees did produce as a witness an official of the mortgagee who related the details of the negotiations leading to the grant of the mortgage loan. His testimony is far from sufficient to establish the contention of the appellees that they were not, as recited in the documents, principal debtors but sureties for their co-obligors.

The appellees themselves did not testify, although the issue concerned matters with which they were better acquainted than anyone else. They failed to show what happened to the proceeds of the mortgage loan. It is a rule grounded in common sense that the burden of proving a fact is on the party who presumably has peculiar means of knowledge enabling him to prove its falsity, if it is false. See *Skeen v. Stanley Co.,* 362 Pa. 174, 66 A. 2d 774; *Bartlett v. Kane,* Fed. Cas. No. 1,077, Taney 186; *IX Wigmore on Evidence,* sec. 2486.

It was shown that the corporation's $47,000 pre-existing mortgage debt was discharged with a portion of the proceeds. No attempt was made to trace the origin of this obligation of the corporation. If, in point of fact, as was suggested in the course of argument, this debt of the corporation was taken over from the appellees who before the creation of the corporation had operated the farm, then this circumstance might affect the appellees' rights. The record indicates without dispute that an obligation of Callis in the amount of some $5700 secured by a conditional contract of sale was discharged with a portion of the borrowed money. Moreover, nothing was shown as to the distribution of the balance of nearly $100,000. Whether the appellees received this

balance or a portion of it would obviously influence the determination of their relation to the transaction and the conclusion as to whether they are or are not sureties.

Not only the loan application, the mortgage and the note were signed by Callis and wife as principal debtors along with the corporation, but the lender's check was endorsed by all of them without any showing that Callis and wife were merely conduits for the transfer of the money without deriving personal benefit. Also it is not disclosed in the record upon what basis the appellees maintained with the concurrence of the Chancellor that there was a principal, viz: Eugene M. Callis, distinct from the tenants by the entireties, Callis and wife, who are claiming to be sureties. It is, of course, a well recognized rule that the property of a husband and wife held by the entireties is distinct from the husband's property and is not subject to his debts; but where it appears on the face of the papers that the wife joined with her husband in creating the debt, as principal and not merely to bar dower, the above rule is not violated by treating the wife as a principal debtor if she fails to show that despite the form of the loan she is in fact a surety. Again in one of his letters offered in evidence Mr. Callis referred to Mrs. Callis and himself as the majority stockholders of Kennersley. This remains unexplained. If she is a stockholder with her husband, it is not made to appear why he is a principal debtor with the corporation, but she is not a principal debtor with him but a surety.

Seeking a superior position, the facts upon which the appellees make their claim must be distinctly shown. Evidence is totally lacking to support a valid conclusion that the loan was not actually made to Mrs. Callis as well as to her husband and the dairy corporation. The appellees failed to meet their burden of proving even a *prima facie* case entitling them to prevail. Their effort to be cloaked in a status contradictory to that unmistakably shown by their signatures must therefore

fail. The finding of the Chancellor in this regard is, we think, clearly erroneous.

Relevant also on the question of the state court's jurisdiction, which was raised in the intervening petition of the trustee in bankruptcy, is the absence of evidence sufficient to show that Callis and wife are sureties, for unless they are sureties they are not entitled to succeed to the rights of the mortgagee in the fund remaining after the satisfaction of its deficiency. If they are not so entitled they cannot be said to have had at the time of the bankruptcy such property or lien in the insurance policies, or the funds which stand in their place, as to enable the state court to declare that such is their property as tenants by the entireties and hence exempt from the bankruptcy estate. Accordingly, on this record we are not in a position to determine the jurisdictional question. But regardless of the correct answer to this issue, the order must in any event be reversed for the reasons heretofore stated.

> *Order reversed and case remanded for*
> *passage of a decree consistent with*
> *the views herein expressed, with*
> *costs to appellant.*

COLLINS, J., delivered the following dissenting opinion.

In the majority opinion in this case it is stated that the appellees took the position that the burden of proof was on the appellant, while the appellant argued that the burden of proof was on the appellees. It is also stated: "As *both sides* preferred to argue doubtful inferences from facts not proved though available, rather than to prove the facts, the record was left in a very incomplete state." (Italics supplied here). I cannot agree that the burden of proof was on the appellees in this case. Both the appellant and the appellees are claimants to a common fund. The appellant, as well as the appellees, had records which were not produced

in evidence. In this Court the appellees asked, if they did not prevail, that the case be remanded in order that they might offer proof to show that Mrs. Callis did not receive any of the borrowed money and therefore was an accommodation maker and thereby entitled to subrogation. The majority opinion denies them this privilege. It is true that there must be an end to litigation. However there appears to be no emergency requiring the final decision of the case at this time and no special reason why this request of the appellees should not be granted. There is a large sum of money here involved.

Code, 1951, Article 5, Section 42, provides in part: "If it shall appear or be shown to the court of appeals that the substantial merits of a cause will not be determined by the reversing or affirming of any decree or order that may have been passed by a court of equity, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of any of the pleadings or the introduction of further evidence, making additional parties, or otherwise, then the court of appeals, instead of passing a final decree or order, shall order the cause to be remanded to the court from whose decision the appeal was taken, and thereupon such further proceedings shall there be had by amendment of pleadings, or further testimony to be taken, or otherwise, as shall be necessary for determining the cause upon its merits, as if no appeal had been taken in the cause, and the decree or order appealed from had not been passed, save only that the order or decree passed by the court of appeals shall be conclusive as to the points finally decided thereby. * * *" This Section has been followed in many cases by this Court. In *Goldsborough v. County Trust Company of Maryland,* 180 Md. 59, 22 A. 2d 920, decided in 1941, this Court followed this Section and remanded the case without affirmance or reversal. Chief Judge Bond said in that case: "But the plaintiff must show the necessity for his resorting to the remedy, and

is permitted to seek only that which is necessary. The mere fact that he does not know the facts sought is not sufficient if they are available to him by his own efforts. He cannot invoke the aid of the Court to relieve him of the effort to provide it for himself. *Becker v. Frederick W. Lipps Co.,* 131 Md. 301, 101 A. 783; *Musch v. Underwood,* 179 Md. 455, 19 A. 2d 699, decided May 1, 1941. * * * The court concludes that the ends of justice would be subserved by remanding the cause to give the plaintiff an opportunity to make by amendment to his bill the averments needed to restrict an accounting to information which the plaintiff himself cannot otherwise obtain." In *Cacy v. Slay,* 127 Md. 493, at pages 500 and 501, 96 A. 690, 693, 1 A. L. R. 764, this Court said: "If such are the facts, legal evidence of them should be produced. * * * We have determined upon the course we will adopt in this case because we hope, to use the language of the statute, Section 38 of Article 5, that 'the purposes of justice will be advanced by permitting further proceedings in the cause,' * * *." Among other cases which have been remanded in order that additional proof might be taken for the purposes of justice are: *Stump v. Henry,* 6 Md. 201, 210; *Johnson v. Robertson,* 31 Md. 476, 492; *Bull v. Pyle,* 41 Md. 419, 425; *Brown v. Thomas,* 46 Md. 636, 641; *Hagerty v. Mann,* 56 Md. 522, 529; *Hoffman v. Hoffman,* 66 Md. 568, 575, 8 A. 466; *Barroll v. Forman,* 88 Md. 188, 201, 40 A. 883; *Dimpfel v. Wilson,* 107 Md. 329, 341, 68 A. 561, 13 L. R. A., N. S., 1180; *Meinhardt v. Meinhardt,* 117 Md. 426, 429, 83 A. 715; *Tobin v. Rogers,* 121 Md. 249, 253, 88 A. 133; *B. & O. R. R. Co. v. Silbereisen,* 121 Md. 407, 88 A. 252, 89 A. 102; *Peoples v. Ault,* 125 Md. 698, 96 A. 398; *Bliss v. Bliss,* 133 Md. 61, 77, 104 A. 467; *Farm Homes Corporation v. Adams,* 171 Md. 212, 224, 188 A. 808; *Young v. Weaver,* 185 Md. 328, 335, 44 A. 2d 748. I am of opinion that "the purposes of justice will be advanced by permitting further proceedings in this cause" as requested by the appellees. I see no reason why this request should not be granted. I therefore dissent from the majority opinion.