OPINION
Appellant Bruce Beckett appeals from an order of the Montgomery County Court of Common Pleas, Juvenile Division, awarding to appellee Monica Rhea the custody of their minor child, Rhea Beckett. To avoid confusion, we will be referring to the child, who has her mother's last name as her first name and her father's last name as her last name, as the child, or the daughter, of the parties, rather than by name.
Beckett contends that the trial court's order fails to consider the changed circumstances of the parties and the best interest of the minor child — in short, that it is not supported by the evidence in the record, but constitutes an abuse of discretion by the trial court. Beckett also contends that the trial court's order fails to give full faith and credit to a 1994 order of a court of the State of Maryland, as required by28 U.S.C. § 1738.
We have reviewed the entire transcript of the trial. Although we share the trial court's evident frustration with Rhea, who has interfered with Beckett's ability to have a meaningful relationship with their child, even to the point of defying orders of the courts of Ohio and Maryland, we agree with the trial court's conclusion that it is not in the best interests of the child to award custody to Beckett at this time. Like the trial court, however, we conclude that it may well be an issue to be revisited if Beckett is able to control his understandable frustration, and, with the assistance of the trial court, establish a meaningful relationship with the child.
Furthermore, we conclude that the trial court's order violates neither 28 U.S.C. § 1738, which Beckett cites, nor28 U.S.C. § 1738A, which deals particularly with an order of one state modifying a child custody order previously entered in another state. Accordingly, the judgment of the trial court isAffirmed.
Rhea Becket, the daughter of the parties, was born June 27, 1991, in the State of Maryland. On July 22, 1991, Beckett filed a complaint, in Maryland, seeking the custody of the child. Besides alleging that he was a fit and proper parent to have custody, and that an award of custody would be in the best interest of the child, Beckett alleged that Rhea, with whom the child had been living, had interfered seriously with his ability to maintain his parental relationship with the child, and had, since July 12, 1991, refused to permit him to see his child.
In 1993, the first of multiple orders was entered in the Circuit Court for Prince George's County, Maryland, awarding custody of the child to Beckett, with visitation awarded to Rhea. Beckett never succeeded in enforcing this custody order.
In 1996, Beckett obtained an order of the Montgomery County, Ohio, Court of Common Pleas, Juvenile Division, that the child be delivered into his possession. Beckett was never able to secure enforcement of this order.
On October 31, 1996, the Ohio court referred the custody issue to the Circuit Court of Prince George's County, in Maryland. That court, in an order entered October 13, 1997, deferred its jurisdiction over the custody, visitation and support issues to the Montgomery County, Ohio, Court of Common Pleas, Juvenile Division. This matter came on for a hearing in the Ohio trial court on October 27, and December 7, 1999.
The Ohio trial court entered an order on January 14, 2000, awarding custody of the child to Rhea. From the judgment of the trial court, Beckett appeals.
 II
Beckett's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED WHEN THEY REFUSED TO PAY DEFERENCE TO A MARYLAND ORDER WHICH GRANTED THE APPELLANT CUSTODY OF THE MINOR CHILD.
In support of this assignment of error, Beckett relies upon 28 U.S.C. § 1738, specifically the third paragraph thereof, which provides as follows:
 Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
Beckett argues that pursuant to the above-quoted part of the statute, an Ohio court is not permitted to modify a judgment of a Maryland court awarding custody of a child. However, the statute requires the receiving state merely to give the judgment the same effect that it would have in the rendering state, not more. In Maryland, an award of custody is always open to modification. Young v. Weaver (1945),185 Md. 328, 44 A.2d 748 at 751.
Furthermore, the statute more particularly governing modification by a court of one state of a child custody determination made in another state is 28 U.S.C. § 1738A
(f), which provides as follows:
 A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
 (1) it has jurisdiction to make such a child custody determination; and
 (2) the court of the other state no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
In the case before us, the Maryland court, by order entered August 13, 1997, declined to exercise jurisdiction over issues involving Rhea Beckett's custody, visitation and support, deferring to the jurisdiction of the courts of Ohio. Accordingly, we find no merit to Beckett's Second Assignment of Error, and it is overruled.
 III
Beckett's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER THE CHANGED CIRCUMSTANCE OF BOTH PARTIES AS WELL AS THE BEST INTEREST OF THE MINOR CHILD.
We understand Beckett's argument in support of this first Assignment of Error to be that the evidence in the record does not support the judgment of the trial court awarding custody of the child to Rhea, and that the trial court abused its discretion in making this award. In this regard, the trial court's decision is worth noting in full:
 This matter is before the Court pursuant to a motion for custody filed by the father, Bruce Beckett.
 Present for the hearing were Mr. James Kirkland, Attorney representing the father, Bruce Beckett; also present was the mother, Monica Rhea; she was represented by Ms. Kimberly Harshbarger, Attorney.
 These matters came on for a hearing before this court on October 27, 1999 and December 7, 1999. All parties were present and properly represented. [Actually, Beckett was not present at the December 7 hearing, but he was represented at that hearing by counsel.]
 The facts of this case are these: In 1991 [it appears from the record that the first custody order in Beckett's favor in Maryland was in 1993] in Prince Georges County, Maryland, Mr. Bruce Beckett was given custody of his child, Rhea Beckett, by the court in Maryland. Since that order went into effect Mr. Beckett has not had the custody or control or supervision of his daughter, Rhea Beckett.
 The child was in the custody of Monica Rhea, the mother. It is unknown to this court the circumstances by which Monica Rhea was able to gain the custody of Rhea Beckett.
 Mr. Beckett, since 1991, has indicated that he has been attempting to gain custody of his daughter. He came to Montgomery County, Ohio back in 1997 at which time this court took action in order to secure Mr. Beckett's visitation rights until such time as the court could determine what was the proper venue for this case to be heard.
 This court then returned the case to Prince Georges County, Prince Georges County then returned the case to Montgomery County indicating that Montgomery County was a more convenient forum. Mr. Beckett has indicated that he has had considerable amount of difficulty in trying to find his daughter, that he has used private investigators, that he has used his own funds since 1991 in order to find out where his daughter was and to regain custody of her.
 This court in 1997 had indicated to Mr. Beckett that this court felt that in order for him to regain the custody of his daughter it was necessary for him to get reacquainted with his daughter. Mr. Beckett indicated that he knows his daughter, his daughter knows him and that should solve the problem and we should turn the child over to him.
 This court indicated to Mr. Beckett that the information the court had received from the guardian ad litem was that the child was not comfortable with Mr. Beckett, she was somewhat apprehensive of him and did not particularly want to be touched by him; however, Mr. Beckett insists that this was just a fabrication, more mindwashing that the mother had done on the child and he felt that his daughter did know him and that he wanted to hug her and to hold her despite what anyone was trying to say to him.
 Mr. Beckett subsequently has refused to continue to visit with the child at Erma's House. This court had indicated that supervised visitation at this time would be the most appropriate due to the fact that the child was not comfortable with Bruce Beckett and also the fact that the court was very apprehensive that Mr. Beckett would take the child and leave the jurisdiction of the court and the child would not be found.
 The mother, Monica Rhea, was very reluctant to give her address and phone number to the court concerning where she and the child were staying. It should be noted concerning this matter that this court had incarcerated Ms. Rhea due to the fact that she did not follow an order of this court which was to bring the child to the court when the court had requested her to do so.
 It should also be noted concerning this matter that this court is of the opinion that Monica Rhea has intentionally interfered with the relationship of her daughter and her father. This court says this because Ms. Rhea has engaged in activities which have prevented Mr. Beckett from seeing his daughter. She has not given him an address and phone number and has actively denied Mr. Beckett visitation when he had a right to do so.
 At the present time Monica Rhea is residing in Montgomery County, Ohio. She is running a school, Rhea Academy. She indicated that her address was 1049 Walton Avenue and she gave her address very reluctantly and generally has not been totally cooperative with the court with regard to this matter.
 It can be said at this time that the mother has been more cooperative than she has in the past. Mr. Beckett has not been particularly cooperative and has not been willing to listen to the professionals concerning this matter.
 The child, Rhea Beckett, has been and currently is in counseling due to the issues that the child is confronted with. When her father first came back into her life she was very apprehensive, she did not know who this man was and did not particularly want to be with him; however, since this court has permitted visitation she has become somewhat more comfortable with him and does recognize that he is her father.
 Mr. Beckett is still somewhat aggressive and somewhat hostile in his manner, not particularly at the child but at others who try to indicate to him more appropriate ways of dealing with his daughter. His daughter seeing these reactions from him becomes somewhat traumatized by it.
 As indicated this matter is before this court pursuant to a motion for custody filed by the father. The evidence presented in this matter indicates that either parent is probably an appropriate custodian for the child.
 The mother has been providing adequate parental care for the child since her birth. There are no issues that anyone has presented to the court concerning her relationship with her daughter; however, it can be said that the mother again has actively interfered with the relationship between the daughter and father.
 Mr. Beckett has indicated that he is employed, he runs a taxi service or a limousine service in the Maryland area. He has indicated that he recently has moved to a larger apartment where he lives with his son and he also has space for his daughter and it would be the three of them. It had been previously known that Mr. Beckett had been residing with his mother; however, he has moved out of that location.
 This court has provided visitation for Mr. Beckett. The visitation has been arranged so that it would be convenient for Mr. Beckett to attend. The court has tried to make that visitation as liberal as possible and as frequent as possible within certain guidelines.
 Mr. Beckett has failed to adhere to those guidelines and insists upon wanting to take the child away and to engage in activities with the child that the child is uncomfortable with. This has been explained to Mr. Beckett however he has failed to follow directions.
 The parties in this matter have been seen by Dr. Payne who did an evaluation of all of the parties in this matter, the mother, father and the child. Dr. Payne's conclusion is that under the circumstances he cannot recommend that the child be reunited with the father due to the fact that the child does not know her father and the father has done very little in order to establish that relationship.
 Also he has indicated that the child does have some emotional issues associated with her father primarily due to the fact that she does not know him and is not comfortable with him because of his attitude.
FINDINGS OF THE COURT:
 This court after hearing all of the testimony in this matter and all of the evidence finds that the motion for custody by the father cannot be granted at this time. The court is of the opinion that Mr. Beckett has not established a relationship with his daughter, has not done the necessary things in order for his daughter to get to know him and to be comfortable around him.
 This would include frequent visitations by the father with the child. He has refused to do this, he has acted in a manner which has in effect bewildered the child and confused the child and therefore she has become somewhat frightened of him. This court is of the opinion that if Mr. Beckett were to exercise a certain amount of reasonableness in this matter to get to know his child that this court would have looked favorably on the return of the child to him.
 However, under the present set of circumstances it is not in the best interests of the child for the child to be returned to the father at this time.
 The court is not unmindful of the fact that the mother has interfered with the visitation and the court so finds that she has done so. This court cannot, based upon that circumstance alone, take the child from the mother and give her to her father. The child is the primary concern of this court and this court finds that the child will be better served by residing with her mother.
 The court will grant visitation in this matter. Visitation is to be arranged by the father with the child and it is to occur at Erma's House until such time as the father can demonstrate that he has established a relationship with the child and that the child is comfortable being around the father and the threat of the father taking the child is diminished.
 This court at this time will not make an order of support due primarily to the fact that this court has found that the mother, Monica Rhea, has interfered with the relationship between the father and daughter and that being by not letting the father know where the child was, not letting the father know the child's address, phone number or having any access to any records concerning the child. Therefore this court cannot condone this behavior and at this time the court will not grant any back child support nor will this court make an order of support at this time.
 This court will continue this issue of support for further proceedings with this court if and when the father can establish a relationship with the child and then this court will consider whether an order of support should be made in this matter.
 It is therefore the order of this court that the motion for custody be denied and that custody of the child remain with the mother, Monica Rhea. This court will make no order of support at this time, including back child support, due to the interference by the mother with the relationship between the father and the child. The court will grant visitation in this matter to be arranged and the visits are to occur at Erma's House until such time as the father gets to know the child.
* * *
We have reviewed the entire transcript of the trial, and we conclude that there is evidence in the record to support all of the trial court's findings and observations. We would note that, having reviewed the transcript, we understand Beckett's frustration at Rhea's constant interference with his relationship with his daughter. This frustration was not ameliorated any by a rude and argumentative cross-examination at trial by the guardian ad litem. We share the trial court's frustration at having, in effect, to reward Rhea for her deliberate refusal to follow orders of the courts of Maryland and Ohio, and her continuing, wilful interference with the relationship between Beckett and his daughter. However, issues of custody and visitation are governed by the best interests of the child. We reluctantly agree with the trial court that, at this time, it is not in the child's best interests for her custody to be awarded to Beckett, because she appears to be somewhat uncomfortable in her relationship with him, most likely as a result of Rhea's malicious interference with that relationship.
We share the trial court's view that Beckett should do his best to avail himself of the visitation available to him, such as it is. We understand his frustration with the limitations upon that visitation, and with Rhea's disgraceful attempts to brainwash his child against him, for which there is evidence in the record. Parenthood can be very difficult. The difficulties inherent in parenthood are endlessly multiplied when the parents are estranged. We appreciate that it will be difficult for Beckett to control his frustration in the presence of his daughter, but we encourage him to do the best he can to curb his frustration, and to use his visitations with his daughter as a way of strengthening his relationship with her. We encourage the trial court to use its best efforts to support and facilitate Beckett's ability to enjoy meaningful visitation with his daughter, when the assistance of the trial court is requested in this regard.
We wholeheartedly agree with the trial court that, after Beckett has succeeded in establishing a meaningful relationship with his daughter, the issue of custody should be re-examined.
It should be emphasized that in affirming the order of the trial court, we do not condone, but deplore Rhea's actions. The trial court should not hesitate to impose sanctions against Rhea if she continues to interfere with Beckett's relationship with his daughter. We caution Rhea that if she continues to interfere with that relationship, an immediate change of custody might become necessary in order to protect the father-daughter relationship, even if it should mean some disruption in the life of the child.
We conclude that the findings of the trial court are supported by the record, and that its order does not constitute an abuse of discretion. Accordingly, Beckett's First Assignment of Error is overruled.
 III
All of Beckett's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
 _______________________ FAIN, J.
BROGAN and WOLFF, JJ., concur.